2000 UT 76

**STATE of Utah, Plaintiff and Appellee,**

v.

**Christopher LITHERLAND, Defendant and Appellant.**

No. 990016.

Supreme Court of Utah.

Sept. 29, 2000.

Jan Graham, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Kristine M. Rogers, Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 Defendant Christopher Litherland appeals his convictions of rape and forcible sexual abuse. He asserts that his trial counsel was ineffective for failing to request that two prospective jurors be dismissed for cause or for failing to remove them with perempto-

ry challenges, and that the trial court committed plain error in failing to remove, sua sponte, those same jurors. We affirm.

## BACKGROUND

¶ 2 We relate the facts in the light most favorable to the jury's verdict. *See State v. Gordon*, 913 P.2d 350, 351 (Utah 1996). During the time of the relevant events in this case, the defendant, Christopher Litherland, who was twenty-four years old, lived in Monticello, Utah. The victim, a sixteen year-old girl, likewise lived in Monticello, but was attending school in Blanding, Utah. The victim knew both Litherland and his wife, and tended Litherland's baby daughter two or three times during the late summer or early fall of 1997. On several occasions, Litherland drove to Blanding to give the victim a ride home from school. On a few occasions, he gave her driving lessons. An intimate relationship developed. The victim testified that on two occasions Litherland drove her up to a mountainous area and touched her breasts, buttocks, and vaginal area, both over and under her clothing. At some point thereafter, the victim told Litherland she wanted to end their relationship. On October 9, the victim was tending Litherland's baby when Litherland unexpectedly arrived home. The victim testified that she and Litherland had an argument about their relationship and then had sexual intercourse.

¶ 3 Litherland was charged with one count of rape, a first degree felony, in violation of Utah Code Ann. § 76-5-402, and one count of forcible sexual abuse, a second degree felony, in violation of Utah Code Ann. § 76-5-404(1).[1] During jury selection, the court addressed the problem of prospective jurors' acquaintance with witnesses and prior awareness of the crime. Monticello is a relatively small community where many of the inhabitants know each other and hear about local significant events by word of mouth. Several prospective jurors were excused because they indicated a strong or unequivocal bias due to information they had received or due to their relationships with participants in the trial.[2] Two prospective jurors, Melvin Dalton and Tamara Barton, also indicated a prior familiarity with the case, but were not excused and sat on the jury panel.

¶ 4 Dalton initially heard about the case through "local town gossip." He also indicated he was personally acquainted with both the victim and Litherland. The victim was a friend of his daughter and he had once attempted to hire Litherland to perform some work for him. In response to a question about how his personal acquaintance with the victim might affect his judgment, he stated as follows:

> I think what I will worry about is my parental feelings for my own daughter that's similar to [the victim], has some of the same mental problems and one thing

---

1. Both charges alleged lack of consent as defined by Utah Code Ann. § 76-5-406(11), which provides that a sexual offense is without consent of the victim if "the victim is 14 years of age or older; but not older than 17, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate." In this case, it was undisputed that the victim was sixteen and Litherland was more than three years older than she was. Based on the victim's testimony, the State asserted that Litherland had, at the very least, enticed the victim to participate in the various episodes of sexual contact alleged as the grounds for the criminal charges. Moreover, with respect to the single episode of intercourse, the victim also maintained that she had become hysterical and several times told Litherland to "stop."

2. At the outset, the court commented that it had dismissed a prospective juror prior to going on record "because her husband [the Monticello Chief of Police] is sitting here at the prosecution

table, and I did not think it would be possible to expect her to be impartial." Then, during roll call, the court inquired of one prospective juror whether, "there [is] some reason you can't be impartial in this case?" She replied, "Yes. Because I am family members with some of these people." The court dismissed her on that basis. Another prospective juror subsequently indicated he might be unable to be impartial because his brother was a police officer. He also noted "other things might affect it.... There is something that happened ... [with a] family member that I don't want to talk about in public." The court responded, "Okay. But do you think that would bias you?" The prospective juror replied, "Probably." The court dismissed that juror as well. Finally, the court dismissed another prospective juror who stated that she had a social relationship with the prosecutor, and consequently thought she "would believe anything [he] said."

or another. And I am probably maybe a little overprotective parent. And I may have a tendency to believe her and because of my own relationship with my own daughter.... That might be unavoidable, make it real hard not to, you know.

¶ 5 In response to this, the court asked, "Counsel, would either of you want me to excuse Dalton? I will if either of you wants me to." Defense counsel replied, "No, I'll pass." Then, after Dalton stated he had a close friendship with one of the defense's named witnesses,[3] the trial court inquired, "Anybody want Dalton excused now?" Defense counsel again replied, "No."

¶ 6 Barton worked for an organization known as Family Agencies Community Together, which is apparently affiliated with the San Juan School District. She attended a meeting where a person who had interviewed the victim discussed the assault and identified Litherland as the perpetrator. Barton affirmed that she had not received a detailed report, had not formed an opinion as to whether Litherland was guilty, and felt she could set aside what she had heard and decide the case based on the evidence presented at trial. At the conclusion of voir dire, the court asked if there were any challenges for cause. Defense counsel stated, "I don't think I have any yet. I think I want to talk to Mr. Litherland about Barton. But I don't have any strong feelings against anyone right now." Shortly thereafter, the court noted, "I want to be able to try this case. But if we run out of jurors and we can't try it because we don't have enough fair jurors, so be it." Defense counsel replied, "Can I take just a second and talk to him in the jury room? I just want to talk about Barton." The court inquired, "Do you want to do that before we return?" and Litherland's counsel replied, "Yes. Do you mind? It will just take 30 seconds." The court thereafter went off the record and Litherland's counsel never requested Barton's removal.

¶ 7 The jury convicted Litherland on both of the charged counts. Litherland now appeals. He argues that Dalton and Barton

were biased, that his trial counsel was ineffective for failing to remove them, and that the trial court committed plain error in refusing to remove them sua sponte.

## DISCUSSION

¶ 8 Litherland bears the burden of establishing that his trial counsel was ineffective in failing to request that Dalton and Barton be dismissed for cause or for failing to exercise peremptory challenges to remove them. *See State v. Taylor,* 947 P.2d 681, 685 (Utah 1997). He also bears the burden of establishing that the trial court committed plain error in failing to dismiss these jurors sua sponte. *See State v. Olsen,* 860 P.2d 332, 334 (Utah 1993).

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 9 We have previously stated that two conditions should be met before we will treat the merits of a claim of ineffective assistance of counsel on direct appeal. In *State v. Humphries,* we stated that "ineffective assistance of counsel should be raised on appeal if [1] the trial record is adequate to permit decision of the issue and [2] defendant is represented by counsel other than trial counsel." 818 P.2d 1027, 1029 (Utah 1991); *see also State v. Hovater,* 914 P.2d 37, 40 (Utah 1996). In this case, Litherland is represented by different counsel on appeal. We therefore address the question of the adequacy of the record prior to reaching the merits of his ineffectiveness claim.

¶ 10 Because the question of what constitutes an adequate record for treatment of an ineffectiveness claim has caused some degree of confusion, we take this opportunity to clarify and refine the law applicable to the adequate record requirement. We begin first with a brief review of the relevant case law and the appellate rules dealing with the appropriate procedural mechanism for raising the claim that a defendant's trial counsel was ineffective.

---

**3.** The defense chose not to call this witness, but apparently did not make that decision until later in the trial.

¶ 11 We have frequently held that society's interest in the finality of judgments requires defendants to raise most issues relating to asserted trial defects in a direct appeal from the judgment of conviction. *See, e.g., Hurst v. Cook*, 777 P.2d 1029, 1034–35 (Utah 1989) (writ of habeas corpus may not be used as substitute for direct appeal); *Codianna v. Morris*, 660 P.2d 1101, 1104 (Utah 1983) (same); *Boggess v. Morris*, 635 P.2d 39, 41 (Utah 1981) (same). On appeal, it is the defendant's obligation to provide supporting arguments by citation to the record. " 'If an appellant fails to provide an adequate record on appeal, this Court must assume the regularity of the proceedings below.' " *State v. Robertson*, 932 P.2d 1219, 1226 (Utah 1997) (quoting *Jolivet v. Cook*, 784 P.2d 1148, 1150 (Utah 1989) (additional quotations omitted)); *see also State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993); *State v. Miller*, 718 P.2d 403, 405 (Utah 1986); *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985); *State v. Jones*, 657 P.2d 1263, 1267 (Utah 1982).

¶ 12 However, subsequent to the issuance of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which established the standard for claims that counsel was ineffective, we recognized that the general procedural rules applicable to most issues raised on direct appeal did not always pertain to claims of trial counsel's ineffectiveness. As *Humphries* noted, a defendant is not in a position to raise the argument that trial counsel was ineffective when that defendant is represented by the same counsel on appeal as at trial. *See* 818 P.2d at 1029; *see also Pascual v. Carver*, 876 P.2d 364, 366 n. 1 (Utah 1994); *Jensen v. DeLand*, 795 P.2d 619, 621 (Utah 1989); *Fernandez v. Cook*, 783 P.2d 547, 549 (Utah 1989). Similarly, with respect to the defendant's burden of providing an adequate record on appeal, counsel's ineffectiveness may

have caused, exacerbated, or contributed to the record deficiencies, thus presenting the defendant with a catch–22 unique to claims of ineffectiveness of trial counsel. *See Hurst*, 777 P.2d at 1036 n. 6 (noting ineffectiveness of counsel as an example of the type of error that may arise outside the record). Accordingly, we observed in *Humphries* that "generally[,] a claim of ineffectiveness of trial counsel cannot be raised on appeal because the trial record is insufficient to allow the claim to be determined." 818 P.2d at 1029.

¶ 13 *Humphries* made this general observation at a time when there was no ready procedural solution to the dilemma created by an inadequate record of trial counsel's ineffectiveness. Thus, where the record was inadequate (and possibly so because of the very ineffectiveness of which defendant complained), the appellate court's treatment and disposal of the issue might preclude defendant's ability to further develop and supplement that record via a collateral evidentiary hearing. *See, e.g., State v. Cosey*, 873 P.2d 1177, 1183–84 (Utah Ct.App. 1994) (Bench, J., dissenting). Consequently, appellate courts were justifiably reluctant to treat the merits of speculative, or otherwise inadequate, ineffectiveness claims, and defendants were likewise reluctant to raise them. In short, the dilemma of an inadequate record created a regime that tended to channel ineffectiveness claims into the habeas arena, where the defendant faced numerous burdens not present on direct appeal.[4]

¶ 14 In 1992, however, rule 23B of the Utah Rules of Appellate Procedure was adopted. This rule was specifically designed to address the inadequate record dilemma. The rule provides that "[a] party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact[ ] necessary for the appellate court's determination of a claim of inef-

4. *See, e.g., Hurst*, 777 P.2d at 1034–35. *Hurst* provided an historical review of the writ, and observed that it is available upon substantially narrower grounds than a reversal on direct appeal. "Habeas corpus will not lie for ordinary evidentiary, procedural, or instructional errors, unless the error is such that it affects the fundamental fairness of the trial. Usually, habeas lies just for constitutional or jurisdictional errors such as erroneous sentences." *Id.* at 1035 n.5.

Moreover, though counsel may be provided and compensated by the State under certain circumstances, there is no constitutionally or statutorily guaranteed right to counsel when defendants elect to pursue collateral attacks on their convictions. *See* Utah Code Ann. §§ 77–32–301, –304; *Gardner v. Holden*, 888 P.2d 608, 622 (Utah 1994) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555–56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).

fective assistance of counsel." Utah R.App. P. 23B(a). With the adoption of this rule, a ready procedural mechanism for addressing the inadequate record dilemma was grafted into the appeals process.

¶ 15 Nonetheless, some of the same presumptions conceived during the pre-rule 23B regime have persisted in case law, and have created judicial disputes over the proper application of the adequate record requirement enunciated in *Humphries. Compare Salt Lake City v. Grotepas*, 874 P.2d 136, 139 n. 3 (Utah Ct.App.1994) (holding record was adequate for treatment of claim that counsel failed to argue pertinent statutory defense), *and Cosey*, 873 P.2d at 1180 n. 2 (holding further fact-finding would be useless to support ineffectiveness claim related to counsel's failure to remove allegedly biased jurors), *with State v. Vessey*, 967 P.2d 960, 964–65 (Utah Ct.App.1998) (holding record is inadequate for treatment of ineffectiveness claims), *Grotepas*,874 P.2d at 140–41 (Bench, J., dissenting) (asserting same), *and Cosey*, 873 P.2d at 1183–84 (Bench, J., dissenting) (asserting same). Furthermore, neither this court, nor the court of appeals, has consistently discussed the adequate record requirement as a prerequisite to addressing the merits of ineffectiveness claims.[5] *Compare State v. Hopkins*, 1999 UT 98, ¶¶ 12–13, 989 P.2d 1065 (refusing to treat ineffectiveness claim due to inadequate record), *with State v. Crosby*, 927 P.2d 638, 644 (Utah 1996) (not addressing adequacy of record), *and State v. Bryant*, 965 P.2d 539, 548–49 (Utah Ct.App. 1998) (not addressing adequacy of record).

¶ 16 With these issues in mind, we now hold as follows: where, on direct appeal, defendant raises a claim that trial counsel was ineffective (and assuming defendant is represented by different counsel than at trial), defendant bears the burden of assuring the record is adequate. This holding merely clarifies the effect of rule 23B. With the adoption of that rule, defendants are no longer presented with the catch–22 that *Humphries* and its progeny were attempting to accommodate. Where trial counsel's alleged ineffectiveness caused or exacerbated record deficiencies, defendants now have an appropriate procedural tool for remedying those deficiencies. If a defendant is aware of any "nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective," Utah R.App. P. 23B, defendant bears the primary obligation and burden of moving for a temporary remand.

¶ 17 Hence, ineffectiveness claims may be treated in the same manner as other issues on direct appeal. Appellants bear the burden of proof with respect to their appeals, including the burdens attending the preservation and presentation of the record. *See Turner v. Nelson*, 872 P.2d 1021, 1024 (Utah 1994) *State v. Wulffenstein*, 657 P.2d 289, 293 (Utah 1982). The necessary consequence of this burden is that an appellate court will presume that any argument of ineffectiveness presented to it is supported by all the relevant evidence of which defendant is aware. In this light, appellate courts need no longer treat the question of an adequate record as a necessary threshold issue.[6]

---

5. There are many reasons why appellate courts may have chosen not to address this question. Ineffectiveness claims may encompass a wide variety of factual scenarios, not all of which appear on their face to be particularly record-dependent. For instance, certain undisputed events or circumstances may constitute plain error in addition to ineffective assistance, or the events or circumstances may simply mandate a per se reversal. *See State v. Bennett*, 2000 UT 34, ¶ 3, 999 P.2d 1 (plain error due to defendant's appearance at trial in jail attire); *State v. Brown*, 853 P.2d 851, 859 (Utah 1992) (per se reversal based on presumed conflict of interest due to duties as part-time prosecutor). Also, where there is no legal basis to support the argument or action that the defendant claims trial counsel

should have taken, it is pointless to inquire whether the factual record supports the defendant's claim that counsel's alleged failure constituted ineffective assistance. *See State v. Loose*, 2000 UT 11, ¶ 19, 994 P.2d 1237 (holding that where evidence was admissible on other grounds, defendant had no basis for arguing counsel was ineffective for failing to interpose objection); *State v. Olsen*, 860 P.2d 332, 335 (Utah 1993) (holding defense counsel was not ineffective in failing to raise challenge for cause that lacked merit).

6. To the extent *Humphries* and its progeny have been construed to mandate a different result, we disavow them.

Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively.[7] This presumption is consistent with the fundamental policies dictated by *Strickland,* see 466 U.S. at 689, 104 S.Ct. 2052 ("court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"), and with the general rule that record inadequacies result in an assumption of regularity on appeal. *See Robertson,* 932 P.2d at 1226.

¶ 18 We thus dispense with the preliminary inquiry into the adequacy of the record and address Litherland's claim that his trial counsel provided ineffective assistance. Because the issue of what standard to apply in assessing whether trial counsel was ineffective for failing to remove a particular juror is one of first impression for this court,[8] we will explain the principles underlying our analysis in detail.

¶ 19 With respect to any ineffectiveness claim, a defendant must first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *State v. Taylor,* 947 P.2d 681, 685 (Utah 1997). Second, the defendant must show that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The first prong of the *Strickland* standard further requires that a defendant rebut the strong presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689,, 104 S.Ct. 2052 (quoting *Michel v. Louisi-*

*ana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

¶ 20 In the context of jury selection, the *Strickland* standard requires the appellate court to make two distinct presumptions when trial counsel does not object to, or remove, a particular juror. First, trial counsel's lack of objection to, or failure to remove, a particular juror is presumed to be the product of a conscious choice or preference. This follows from the general presumptions imposed by *Strickland* and from the fact that a conscious refusal to object to or remove a particular juror may be manifested by nothing more than silence in many circumstances. Second, because the process of jury selection is a highly subjective, judgmental, and intuitive process, trial counsel's presumably conscious and strategic choice to refrain from removing a particular juror is further presumed to constitute effective representation.

¶ 21 These presumptions are appropriate in this context in large part because jury selection is more art than science. There are a multitude of inherently subjective factors typically constituting the sum and substance of an attorney's judgments about prospective jurors. A prospective juror's demeanor, interaction with others in the courtroom, and personality in general may all play an important role in providing clues as to that juror's likely predilections toward the case at hand. *Cf. State v. Higginbotham,* 917 P.2d 545, 546–47 (Utah 1996) (exercise of peremptory challenge to remove juror making hostile eye contact).

¶ 22 An attorney's decisions regarding jury selection may even appear counterintuitive, particularly when viewed from the perspective of a bare transcript on appeal. For

---

7. This standard does not preclude an appellate court from remanding on its own motion. The rule expressly provides that the appellate court may remand according to its discretion. *See* Utah R.App. P. 23B(a). This allows the appellate court to accommodate unusual cases or situations that may arise. There may also be cases where the State, as appellee, may move for remand. Rule 23B by its terms does not limit its availability to the appellant, but rather allows a motion by a "party to an appeal in a criminal case." *Id.* We simply reemphasize here that the defendant retains the primary incentive and fun-

damental burden to move for remand where such a remand is necessary to support presentation of an ineffectiveness argument on appeal.

8. The court of appeals has dealt with this issue several times. *See Bryant,* 965 P.2d at 548–49; *Cosey,* 873 P.2d at 1179–80; *State v. Brooks,* 868 P.2d 818, 820–22, 826 (Utah Ct.App.1994); *State v. Tennyson,* 850 P.2d 461, 465–70 (Utah Ct.App. 1993); *State v. Ellifritz,* 835 P.2d 170, 176–78 (Utah Ct.App.1992).

instance, an attorney may make a reasoned judgment that a prospective juror's consciousness of, and concern for, his or her own potential bias actually provides a more sure foundation for confidence in that juror's reasoning processes. The attorney may even sense that the prospective juror is likely to "overcompensate" by assigning more weight or credibility to testimony that tends to oppose the juror's own potential bias.

¶ 23 In short, a trial attorney's decisions during jury selection legitimately may be based on little more than personal preference.[9] Defense counsel acting on their own intuitions, or upon their clients' requests, clearly have the right to identify and prefer particular jurors without regard to any particular objective criterion or philosophy of jury selection. Moreover, even to the extent that such criteria or philosophies could be articulated, defense counsel should not be expected or required to express them on the record.

¶ 24 Because trial counsel's jury selection decisions are so inherently subjective, appellate review becomes an inherently speculative exercise. As was stated by the Court of Appeals for the Fifth Circuit, "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts." *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir.1989). Likewise, our own court of appeals has observed that

> the transcript reveals nothing about [the juror's] demeanor or other intangible characteristics that constitute the collage of attributes attorneys assess in choosing jurors. For all we know [he or she] was the most attentive juror, or the only one who

glanced disparagingly at the prosecution or sympathetically toward the defendant.

*State v. Tennyson*, 850 P.2d 461, 469 (Utah Ct.App.1993); *see also Cosey*, 873 P.2d at 1179–80 (commenting on same difficulty and summarizing cases); *State v. Ellifritz*, 835 P.2d 170, 177 (Utah Ct.App.1992) (stating that only court and counsel have advantaged view of juror's potential bias).

■■■ ¶ 25 Consequently, because *Strickland* requires the presumption that trial counsel's strategic decisions are reasonable, *see* 466 U.S. at 689, 104 S.Ct. 2052, and because trial counsel is justified in relying on little more than subjective preference for retaining a particular juror, it follows that the decision not to remove a particular juror need only be plausibly justifiable, and such plausible justifiability is ordinarily presumed. In other words, the appellate court will presume that counsel's lack of objection to, or failure to remove, a particular juror was the result of a plausibly justifiable conscious choice or preference. Of course, the *Strickland* presumption of effectiveness is not irrebuttable. The defendant may rebut the presumption by showing: (1) that defense counsel was so inattentive or indifferent during the jury selection process that the failure to remove a prospective juror was not the product of a conscious choice or preference;[10] (2) that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror; or (3) that there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable.

■■■ ¶ 26 Turning to Litherland's specific factual claims in this case, we address the merits according to these standards.

---

9. Of course, those preferences are not without limitation. In addition to the guidelines discussed in this opinion, there are other discrete restrictions applicable to jury selection. *See, e.g., Batson v. Kentucky*, 476 U.S. 79, 88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding prosecutor may not discriminate against potential jurors by exercising race-based peremptory challenges); *see also J.E.B. v. Alabama*, 511 U.S. 127, 154, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending *Batson* rule to include gender-biased use of peremptory challenges); *Georgia v. McCollum*, 505

U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (applying *Batson* rule to defendant's use of peremptory challenges).

10. To demonstrate actual inattentiveness or indifference, defendant must either prove a specific and clear example of inattentiveness that directly caused the failure to object to a particular juror, or else show that counsel generally failed to participate in a meaningful way in the process as a whole.

Our review is based on the available record, which consists of the transcript of jury voir dire.[11] Litherland argues his counsel should have interposed an objection for cause to either Dalton or Barton, or, failing that, should have employed peremptory challenges to remove them. The court twice offered Litherland the option to dismiss Dalton, and Litherland's counsel flatly refused both times. The court then asked Litherland's counsel if he had any further objections for cause. Litherland's counsel indicated some concern respecting Barton and expressed an intention to discuss the matter with Litherland in private. Although the record does not reflect the occurrence or exact content of any consultation between Litherland and his counsel, it does reflect the fact that Litherland's counsel considered interposing an objection for cause, requested a brief, off-the-record consultation with his client, and thereafter made no effort to remove Barton, either for cause or by peremptory challenge.[12]

¶ 27 Thus, even apart from the general presumption that Litherland's counsel consciously chose to retain Dalton and Barton, the record contains specific evidence that Litherland's counsel actively participated in the jury process as a whole, and further paid specific attention to the two jurors about whom Litherland now complains. Consequently, this clearly is not a case where defense counsel appeared either inattentive, ignorant, or indifferent to possible indications of bias. We therefore conclude that Litherland's counsel's refusals to remove Dalton and Barton were the result of conscious preferences.

¶ 28 Moreover, Litherland has failed to rebut the presumption that the conscious choices exercised by his counsel were plausibly justifiable. Although the record demonstrates that Litherland's counsel did indeed possess a relatively strong basis for objecting to Dalton, and provides a potential, but far from compelling, basis as to Barton,[13] neither prospective juror indicated the sort of strong or unequivocal bias that would mandate their removal from the jury in the face of Litherland's counsel's presumably legitimate preference to retain them. Litherland's counsel could have exercised many subjective strategic judgments to arrive at the conclusion that Dalton and Barton would be more favorably disposed to his client in comparison to other prospective jurors.

11. In this case, Litherland twice moved for remand pursuant to rule 23B. This court denied both motions. Litherland's first motion for a rule 23B remand was filed by the same counsel who represented Litherland at trial. It articulated no clear basis for remand. Thereafter, Litherland obtained new counsel. Litherland's new counsel evidently presumed the existing record, consisting solely of the transcript of the jury voir dire, was adequate for decision of Litherland's claims and filed the appellate brief on that basis. Then, after the State submitted its responsive brief, which posited several speculative bases for Litherland's trial counsel's decision not to challenge Dalton and Barton, Litherland's appellate counsel belatedly moved for a rule 23B remand. The motion purported to be conditional in nature and amounted to a request that this court render a preliminary advisory opinion on the issue of the record's adequacy. Litherland's motion clearly failed to conform to rule 23B in several respects. First, there is no provision for a conditional motion based on a request for an advisory opinion. Second, rule 23B requires a showing of good cause if appellant's brief has already been filed, see Utah R.App. P. 23B(a), which Litherland manifestly ·failed to demonstrate. Instead, Litherland's appellate counsel merely complained about the State's speculation in its responsive brief. Finally, the motion was not supported by a specific "nonspeculative allegation of facts, not fully appearing in the record on appeal." *Id.* Such an approach was clearly inadequate. Because Litherland carried the burden of making allegations that would support a finding of actual ineffectiveness, and he failed to meet that burden, the State's own speculation was immaterial to our decision to reject his second rule 23B motion.

12. The attorneys passed sixteen members of the venire for cause. Each removed four with peremptory challenges and the remaining eight sat on the jury that convicted Litherland.

13. As noted, the trial court twice offered both counsel the opportunity to remove Dalton based on his equivocal expression that he might be tempted to favor the victim's testimony and on his acquaintance with both the victim and the defendant. The record is less clear as to the basis for objecting to Barton. Although she had heard some information about the case from a relatively authoritative and possibly biased source, many of the jurors on the panel had heard similar information in the form of news or gossip. Also, Barton was steadfast and unequivocal in her assurances that she could set aside what she had heard and judge the case purely on the evidence presented in court.

¶ 29 Where (1) Litherland's counsel actively participated in the jury selection process, (2) neither Dalton nor Barton expressed a strong or unequivocal bias, and (3) Litherland has failed to present any other evidence showing his counsel's jury selection decisions were not plausibly justifiable, we must conclude that his counsel's actions meet the first prong of *Strickland*'s standard of objectively reasonable representation. Where the first prong is met, we need not address the second prong relating to prejudice. We therefore reject Litherland's claim that his counsel rendered ineffective assistance by failing to interpose objections for cause to Dalton and Barton, or by failing to remove them with peremptory strikes.

## II. PLAIN ERROR

¶ 30 Litherland also asserts that the court should have sua sponte dismissed both Dalton and Barton for cause. He argues that these jurors were clearly biased, and that the court's failure to dismiss them on its own motion constituted plain error. We disagree.

¶ 31 To demonstrate plain error, Litherland must show an error occurred that should have been obvious to the trial court and that prejudiced the outcome of his trial. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Because we conclude that there was no obvious error requiring the trial court's intervention, we again need not address the question of prejudice.[14] Here, the trial court was presented with a presumably conscious decision to retain two prospective jurors for whom the defendant arguably possessed a sufficient basis to challenge for cause. Under these circumstances, we cannot say the trial court abused its discretion by respecting defense counsel's choices. In other contexts, we have refused to give defendants the benefit of traditional plain error analysis where

doing so would create an incentive for invited error. *See State v. Brown*, 948 P.2d 337, 343 (Utah 1997) (citing *State v. Bullock*, 791 P.2d 155, 158–59 (Utah 1989)); *cf. State v. Labrum*, 925 P.2d 937, 939 (Utah 1996) (discussing invited error dilemma).

¶ 32 We believe the principle of refusing to sanction invited error finds even stronger resonance in the jury selection context, where intuition and personal preference necessarily play a strong role. It is generally inappropriate for a trial court to interfere with counsel's conscious choices in the jury selection process, notwithstanding the existence of a reasonable basis for objecting to those jurors. Only where a juror expresses a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror. Such was not the case here. We therefore hold that the trial court did not commit plain error in declining to overrule Litherland's counsel's affirmative, strategic decision to retain Dalton and Barton.[15]

## CONCLUSION

¶ 33 We hold that Litherland's counsel did not render ineffective assistance by failing to obtain dismissals of Dalton and Barton. Neither did the court commit plain error when it refused to interfere with Litherland's counsel's choices to retain those jurors. We affirm Litherland's convictions.

¶ 34 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

14. Reviewing courts have occasionally relied on a so-called "common standard" to dispose of claims where a defendant raises both an ineffective assistance argument and a plain error argument with respect to counsel's alleged failures. *See State v. Verde*, 770 P.2d 116, 124 n. 15 (Utah 1989); *Brooks*, 868 P.2d at 822; *Ellifritz*, 835 P.2d at 174. Because the defendant must show prejudice to prevail under either argument, the "common standard" merely functions as an analytical shortcut that avoids treatment of the other

prongs of the ineffective assistance and plain error standards.

15. Of course, we do not mean to say that trial courts may never exercise their discretion to dismiss prospective jurors without first consulting counsel. In this case, the trial court, acting within its discretion, appropriately dismissed four prospective jurors who had expressed strong or unequivocal bias.