**2015 UT App 285**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RYAN M. VALENCIA,
Appellant.

Memorandum Decision
No. 20140516-CA
Filed November 27, 2015

Second District Court, Ogden Department
The Honorable Joseph Bean
No. 131902339

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and KATE A.
TOOMEY concurred.[1]

BENCH, Senior Judge:

¶1   Ryan M. Valencia appeals his convictions for possession
of methamphetamine with intent to distribute and possession of
drug paraphernalia, arguing that his trial counsel performed
ineffectively by failing to move for a directed verdict. We affirm.

¶2   Valencia asserts that the evidence at trial was insufficient
to support his convictions. However, because Valencia's trial

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

counsel did not raise the sufficiency issue at trial by moving for a directed verdict, Valencia asserts that he received ineffective assistance of counsel. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To establish ineffective assistance of counsel, Valencia must demonstrate, first, "that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and second, "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *See State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

¶3     "Failing to file a futile motion does not constitute ineffective assistance of counsel." *State v. Heywood*, 2015 UT App 191, ¶ 48, 357 P.3d 565. Therefore, if the evidence was such that a motion for a directed verdict would not have been granted, trial counsel cannot be deemed to have performed deficiently.

¶4     "When evaluating a motion for a directed verdict, the court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts." *State v. Montoya*, 2004 UT 5, ¶ 32, 84 P.3d 1183 (citation and internal quotation marks omitted). Rather, so long as the State "has produced believable evidence on each element of the crime from which a jury, acting reasonably, could convict the defendant," the court must deny the motion. *Id.* (internal quotation marks omitted). "[E]lements needed to make out a cause of action may be proven by direct and by circumstantial evidence." *Id.* ¶ 33 (citation and internal quotation marks omitted). Therefore, "[i]f there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury." *Id.* (citation and internal quotation marks omitted).

¶5 Valencia asserts that the State failed to introduce sufficient evidence to support the possession elements of either of the two crimes of which he was convicted. The evidence of possession is largely circumstantial. However, it is not so insubstantial that no jury, acting reasonably, could have convicted Valencia.

¶6 "Possession sufficient to sustain a conviction need not be actual but may be constructive." *State v. Cardona-Gueton*, 2012 UT App 336, ¶ 8, 291 P.3d 847 (citation and internal quotation marks omitted). "To establish constructive possession, the State must prove that there was a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug." *State v. Gonzalez-Camargo*, 2012 UT App 366, ¶ 17, 293 P.3d 1121 (citations and internal quotation marks omitted); *see also* Utah Code Ann. § 58-37-2(1)(ii) (LexisNexis 2012) (defining "possession"). Factors relevant to this inquiry may include, among other things, "ownership and/or occupancy of the . . . vehicle where the drugs were found, presence of defendant at the time drugs were found, defendant's proximity to the drugs, previous drug use, incriminating statements or behavior, presence of drugs in a specific area where the defendant had control, etc." *State v. Workman*, 2005 UT 66, ¶ 32, 122 P.3d 639. While occupancy "may not be enough to show constructive possession by itself[,] . . . additional evidence, including circumstantial evidence, that strengthens the nexus between . . . occupancy and the contraband" may support "an inference of possession." *State v. Ashcraft*, 2015 UT 5, ¶ 20, 349 P.3d 664.

¶7 In this case, the jury heard two phone calls made from a cell phone belonging to a woman named Tiffany Booth to Craig Green, a known drug dealer whose phone was being wiretapped by the Weber Morgan Narcotics Strike Force. In the first call, a woman, presumably Booth, offered to trade a cell phone for some "D," which an officer interpreted to mean "dope or drugs."

In the second call, an unidentified male asked Green if he had "three quarters of an ounce" and indicated that he had $600. An officer testified that $600 was "consistent with what one could pay for three quarters of an ounce for methamphetamine" and that three quarters of an ounce is considered a "dealer quantity." The jury then heard a third call, in which Green called a phone number later identified as Valencia's and arranged to meet at a gas station in Roy, Utah. The officer testified that the individual talking on Valencia's phone "appeared to [have] the same voice or similar voice" as the unidentified male who had previously called Green from Booth's phone and that the call "was definitely a continuation of the other two calls" made by Booth and the unidentified male from Booth's phone.

¶8      Another officer testified that he followed Green to the gas station, where he observed Booth and Valencia pull into the parking lot next to Green's vehicle and watched Valencia make a hand-to-hand exchange with Green. Ultimately, when officers pulled over Booth and Valencia's vehicle, they discovered methamphetamine on Booth's person and a digital scale of the kind "commonly used to weigh narcotics" in the passenger-side glove compartment in front of where Valencia was sitting.

¶9      Although the State did not present a witness to identify Valencia's voice, the evidence indicated that one of the calls was made by Green to Valencia's phone, that the voice on that call was similar to the voice on the earlier call, and that Valencia met Green in the place agreed to in the telephone discussion. This circumstantial evidence supports a reasonable inference that Valencia was the person on the phone who agreed to purchase drugs from Green. Valencia's agreement to purchase the drugs, his hand-to-hand exchange with Green, and the later discovery of the drugs in the possession of his travelling companion, taken together, create a reasonable inference that Valencia possessed the methamphetamine jointly with Booth. The inference that Valencia and Booth were jointly involved in a scheme to

purchase methamphetamine in a "dealer quantity," coupled with Valencia's proximity to the digital scale, also created a reasonable inference that Valencia constructively possessed the scale. Thus, the State presented believable evidence from which the jury could have reasonably found the possession element on both charges. Because this evidence was sufficient to support Valencia's convictions, the trial court could not have granted a directed verdict on either charge and any motion defense counsel might have made would have been futile. *See State v. Heywood*, 2015 UT App 191, ¶ 48, 357 P.3d 565.

¶10    Valencia points to evidence contradicting the inference of possession, such as the fact that a police dog did not indicate on his person, despite Valencia's allegedly having handled the methamphetamine; that the quantity of methamphetamine found on Booth was more than the three quarters of an ounce she and Valencia had allegedly agreed to purchase; that the object in Valencia's hand both before and after the hand-to-hand exchange looked like it could be a cell phone; that officers following the vehicle did not see Valencia transfer anything to Booth; and that the State failed to explicitly identify Valencia as the person on the other end of the calls with Green. While this evidence certainly weakens the State's case, the trial court is not free to weigh the evidence in considering a motion for directed verdict. *See State v. Montoya*, 2004 UT 5, ¶ 32, 84 P.3d 1183.

> The question presented is not whether we can conceive of alternative (innocent) inferences to draw from individual pieces of evidence, or even whether we would have reached the verdict embraced by the jury. It is simply whether the jury's verdict is reasonable in light of all of the evidence taken cumulatively, under a standard of review that yields deference to all reasonable inferences supporting the jury's verdict.

*Ashcraft*, 2015 UT 5, ¶ 24. Thus, the evidence Valencia relies on does not alter our conclusion that his convictions were supported by sufficient evidence.

¶11 Because the State presented sufficient believable evidence from which the jury could have concluded that Valencia constructively possessed the methamphetamine and the scale, any motion for directed verdict would have been futile. Accordingly, we reject Valencia's argument that his counsel performed ineffectively and affirm his convictions.

_____