2018 UT App 87

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SHILOH D. RINEHART,
Appellant.

Per Curiam Opinion
No. 20170185-CA
Filed May 10, 2018

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 151403129

Emily Adams, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

Before JUDGES GREGORY K. ORME, MICHELE M. CHRISTIANSEN, and
KATE A. TOOMEY.

PER CURIAM:

¶1    Shiloh D. Rinehart appeals the restitution order entered following her conviction of burglary, a third degree felony. Rinehart raises two issues on appeal, both of which rely on evidence found outside the record. Therefore, Rinehart also filed a motion seeking a remand under rule 23B of the Utah Rules of Appellate Procedure. We deny the motion for remand and affirm the restitution order.

¶2    "A remand under rule 23B will be granted only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Hand*, 2016 UT App 26, ¶ 2, 367 P.3d 1052 (quotation simplified). To demonstrate ineffective

assistance, a defendant must demonstrate "that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *Id.* (quoting *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92). "It stands to reason that if the defendant could not meet the test for ineffective assistance of counsel, even if [the] new factual allegations were true, there is no reason to remand the case, and we should deny the [rule 23B] motion." *State v. Griffin*, 2015 UT 18, ¶ 20; *see also State v. Heywood*, 2015 UT App 191, ¶ 40, 357 P.3d 565 (stating that an appellate court considers affidavits supporting rule 23B motions "solely to determine the propriety of remanding ineffective assistance of counsel claims for evidentiary hearings" (quotation simplified)). Because we conclude that the facts alleged in the rule 23B motion, even if true, could not support a determination that counsel was ineffective, we deny Rinehart's motion and affirm the restitution award.

¶3     Rinehart first claims that counsel was ineffective in failing to investigate and introduce evidence to support Rinehart's claim that items she pawned on the day of the burglary were her own property and testimony of a potentially helpful witness. Rinehart also claims that trial counsel was ineffective in failing to present evidence related to Rinehart's ability to pay restitution by introducing evidence related to her health conditions.

¶4     Rinehart pleaded guilty to the burglary of the victim's (Victim) home, resulting in reduction of the level of the burglary offense and dismissal of another charge. At a restitution hearing, Rinehart testified that she took nothing from Victim's home after she was discovered by Victim's daughter and climbed out of a window to escape in a vehicle. Victim testified for the State at the restitution hearing, and the State provided a multiple-page exhibit. This exhibit included (1) a list compiled by Victim listing jewelry, coins, and sports memorabilia with estimated values; (2) a receipt from Xtreme Pawn listing several items pawned by Rinehart on the day of the burglary; and (3) a text from Platinum

Sports listing values on some sports cards. The pawn receipt indicated that Rinehart pawned five pieces of jewelry, including "L's BLK Hills Gold Single, not a [pair] .8 grams earrings." The receipt stated the "date made" as November 6, 2015, and the "time made" as "09:56." In response to the pawn receipt, Rinehart claimed that the items were actually her own property and that she had pawned the items prior to the time she burglarized Victim's home.

¶5 At the conclusion of the restitution hearing, the district court found Victim's testimony credible and Rinehart's testimony not credible. The court did not believe Rinehart's testimony that she did not take anything from Victim's home. The district court noted that Rinehart had a significant history of crimes involving dishonesty. It also observed that Victim was able to "match up two of the items of jewelry with other earrings she already had with their mate" and "on that basis the Court would find Ms. Rinehart's testimony incredible."

¶6 Rinehart asserts trial counsel should have presented evidence showing "that Ms. Rinehart actually did pawn her items two hours before the burglary occurred." Appellate counsel's affidavit in support of the rule 23B motion attaches items obtained in discovery, including "a screenshot of [Victim's] cell phone showing text messages that Rinehart sent her on November 6, 201[5] at 12:29 pm, 12:47 pm, and 12:52 pm and a photograph taken from a neighbor's security camera showing a blue Ford Explorer driving away from [Victim's] home at 12:59 pm on November 6, 2015." Counsel attests that those documents established the time of the burglary. Appellate counsel further attests that she called Xtreme Pawn—where Rinehart pawned some items on November 6, 2015—and spoke to an employee who has worked there since 2012. The employee stated that the store was only open from 9 am to 6 pm on weekdays in 2015. The affidavit does not indicate that the employee possessed any direct knowledge of the transaction with Rinehart or purported to vouch for the accuracy of the receipt's time stamp. Still, Rinehart speculates that the 9:56 time

indicated on the pawn receipt could only mean 9:56 am, thus supporting Rinehart's claim that she pawned her own items because the transaction must have occurred before the burglary of Victim's home. Rinehart points to the times on her text messages intended to lure Victim out of her home and the date and time stamp on a surveillance video showing Rinehart escaping Victim's home to establish that the burglary occurred around noon. The latter materials were not introduced into evidence, but they were provided in discovery.[1]

¶7 Appellate counsel's affidavit does not contain information to support the accuracy of the time indicated on the pawn receipt. Even assuming that it is accurate, this must be viewed in light of Victim's identification of the items in the possession of the pawn shop as her property. The listed items included a single earring from a set of earrings taken, while its mate remained in Victim's possession. Even assuming that the proof of the pawn shop hours and the time of the burglary would bolster Rinehart's credibility, the allegation that the pawn shop receipt shows that Rinehart pawned her own items hours before the burglary remains speculative. The State also notes that Rinehart was in Victim's home on the day prior to the burglary and might have had the opportunity to take the items then.

¶8 At the restitution hearing, trial counsel presented Rinehart's testimony that the pawned items were her own property and that the transaction at the pawn shop occurred before the burglary. The district court rejected this claim as not credible. A remand to introduce evidence of the time line for the burglary and the alleged time of the pawn transaction would be based upon speculation, especially when weighed against Victim's identification of the pawned items as her property. Introduction of the evidence is more likely to raise questions about how Rinehart came to be in possession of Victim's

---

1. Because Rinehart pleaded guilty to burglary, the district court received evidence only at the restitution hearing.

property. As such, the rule 23B motion seeking a remand is not based upon nonspeculative facts that would demonstrate deficient performance or resulting prejudice.

¶9 Furthermore, Victim testified about an encounter with a person at a local business who, upon learning her name, said that he may have a bag of sports memorabilia belonging to her. She also testified that a woman in possession of one of her rings had told her that she was given the ring by Rinehart's father. Rinehart's claim that the restitution award was principally based upon her criminal history and the pawn receipt is incorrect. Other evidence supported a determination that Rinehart's testimony that she took nothing in the burglary was not credible.

¶10 Rinehart also claims that her trial counsel "failed to investigate a witness who saw [Victim] attempting to sell the items that she reported stolen." Rinehart's affidavit says that she told trial counsel about the potential witness and that counsel either said that the testimony would not be helpful because the potential witness would not be credible or that he was unable to find the witness. Trial counsel's affidavit states that he remembers being told about the witness, but he does not recall getting a name or other contact information.

¶11 Rinehart argues that if trial counsel had introduced the testimony of the potential witness, that information would serve to damage Victim's credibility. She provides an affidavit of a private investigator stating that he was able to contact someone claiming to be the witness identified by Rinehart. That person texted that Victim "stopped by after [Rinehart] went to jail with a bunch of jewelry and old coins trying to sell them to me and Rodger" and that "she had a huge bag full. . . it was probably a day or two after [Rinehart] went to jail." Even assuming that the statements are true, they are insufficient to demonstrate that the items allegedly offered to the potential witness were the same items that Victim claimed were taken from her home. Thus, the allegations are speculative. Furthermore, there is no evidence that Rinehart provided enough contact information to allow trial

counsel to locate this witness. Rinehart also stated that her trial counsel expressed doubt that the testimony of someone Rinehart met in jail would be helpful, demonstrating that counsel strategically evaluated the potential testimony.

¶12    Finally, Rinehart asserts that counsel did not present evidence about her background that might have persuaded the district court that she was unable to pay the amount of restitution ordered due to chronic health problems. Rinehart's affidavit represents that she has an eye condition that she characterizes as debilitating, and for that reason, she could not produce enough income to pay restitution. Rinehart herself stated at the restitution hearing that the district court judge was familiar with her and her history from her frequent court appearances. The transcript reflects that the district court considered Rinehart's age, her impending parole date, and her ability to work for at least thirty more years. The court stated, "I believe in that time she would be able to pay off the amount of restitution." Therefore, the court set the court-ordered restitution in the amount of $67,710. "She could, even if she paid $2000 a year, she would be able to pay most of this off and she could easily do that if she elects to get a regular job which she's capable of doing." Based upon the district court's determination that Rinehart was capable of employment, trial counsel did not perform deficiently in failing to present this additional information and in focusing his efforts on trying to obtain a lower restitution award.

¶13    Because we deny the motion for a remand pursuant to rule 23B, and because the arguments on appeal are based upon evidence that would be added to the record on a remand, there are no remaining claims regarding the restitution award based on the record before this court. Accordingly, we affirm.

———————