**2018 UT App 185**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TYLER W. CASPER,
Appellant.

Opinion
No. 20170428-CA
Filed September 27, 2018

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 161401487

Emily Adams, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1     Tyler W. Casper pleaded guilty to two counts of
first-degree aggravated sexual abuse of a child.[1] In exchange, the
State agreed to dismiss Casper's remaining charges and
recommend that he serve six years to life for each count to run
consecutively rather than the maximum sentence of fifteen years
to life. The district court reduced Casper's sentence to ten years

---

1. Casper's convictions arose from two separate cases involving
aggravated sexual abuse of a child. The district court sentenced
Casper on both cases at the same hearing. Because Casper
challenges the sentences the court imposed, we have
consolidated both cases for purposes of this appeal.

to life, noting that his mental-health status warranted a reduction, but that the aggravating circumstances precluded the court from reducing it further. The court also ordered both sentences to be served consecutively. Casper appeals his sentences, contending his defense counsel was ineffective in failing to argue that the court should have considered the proportionality requirement articulated by our supreme court in *LeBeau v. State*, 2014 UT 39, 337 P.3d 254. Because we conclude there was a reasonable tactical basis for counsel not to direct the court to consider *LeBeau*'s proportionality requirement, counsel did not perform deficiently. Accordingly, we affirm.

¶2    Casper was charged with three counts of first-degree aggravated sexual abuse of a child for acts he perpetrated against a seven-year-old victim (First Victim). When the police interviewed him, Casper admitted that he had sexually abused First Victim. The State later charged Casper with another count of first-degree aggravated sexual abuse of a child for acts perpetrated against an eight-year-old victim (Second Victim). The victims each reported that Casper threatened to hurt them if they told anyone what he had done.

¶3    While the cases were being investigated, Casper threatened to kill anyone who tried to help the victims' families with the case. He said he would "put their heads down on a table[] and snap their heads off." After Casper underwent a competency evaluation, the evaluators determined that he was competent to stand trial despite exhibiting the following conditions: mild autism or Asperger's syndrome, anxiety, depression, attention deficit hyperactivity disorder, and impulse control disorder.

¶4    Casper agreed to plead guilty to two counts of aggravated sexual abuse of a child, one for each victim. In exchange, the State agreed to dismiss the two remaining charges and recommend a sentence of two consecutive terms of six years to life in prison, rather than the presumptive fifteen years to life. *See* Utah Code Ann. § 76-5-404.1(5) (LexisNexis 2017).

¶5 Adult Probation and Parole prepared a presentence investigation report (the PSI Report). The PSI Report contained a statement from Casper that "explained his version of what happened." He said that First Victim attempted to seduce him and that he "lost [his] ability to gain control of [the] situation," while at the same time expressing remorse for First Victim. Casper did not express any remorse for the acts he perpetrated against Second Victim. Casper also acknowledged that he was aware of "the cyclical patterns of this crime."

¶6 In other reports filed with the court, Casper admitted that he had previously put his hand down a female neighbor's pants and touched her "private parts." He also acknowledged that he has impulse control disorder, which one of the evaluators explained is "characterized by the repeated inability to refrain from performing a particular action that is harmful to oneself or others." One of his mental health providers said that Casper "has a history of being violent, aggressive[,] and having explosive behaviors." He also tested high on the sexual addiction scale and, at the time of the evaluation, continued to "experience[] excessive thinking about sexual behavior, [have] opportunities to view pornography, and entertain[] sexual fantasies."

¶7 At the sentencing hearing, the court was provided with the PSI Report and letters from the victims' family members, Casper, Casper's family members, and one of Casper's therapists. The court also heard statements from the victims' parents about the impact of Casper's conduct on the victims. Casper's mother spoke on behalf of her son, and Casper spoke on his own behalf. Casper explained that he had a difficult childhood and was often "teased." He then expressed remorse for his conduct and explained that he had recently become more spiritual.

¶8 "[A]fter carefully reviewing" all of the information provided to the court relevant to sentencing, the court concluded that, "in the interest of justice," it would reduce Casper's

sentence to ten years to life on both counts to run consecutively with each other. The court explained that the sentence could be reduced from the presumptive fifteen years to life because of Casper's mental-health status, but that the court could not reduce it to the six years to life that the State and defense counsel recommended because of the following aggravating circumstances: "substantial physical or psychological injury to the victims," the number of victims involved, and Casper was in a position of authority over the victims. Casper appeals.

¶9    On appeal, Casper contends he received constitutionally ineffective assistance of counsel because defense counsel failed to "present evidence of proportionality—an essential prong of the interests-of-justice framework articulated under *LeBeau* . . . [at] the sentencing hearing."[2] "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Craft*, 2017 UT App 87, ¶ 15, 397 P.3d 889 (quotation simplified).

¶10    To succeed on a claim of ineffective assistance of counsel, "a defendant must first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92; *see also Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). When challenging counsel's performance, a defendant must overcome the "strong presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Litherland*, 2000 UT 76, ¶ 19 (quotation

---

2. Casper also appears to argue that the district court erred when it failed to engage in a proportionality analysis. But Casper did not raise this issue before the district court and has failed to argue that the plain error exception to the preservation rule applies. *See State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443. We therefore decline to address it.

simplified). If the defendant has demonstrated that counsel's performance was deficient, the defendant must then show that the deficient performance was prejudicial and negatively affected the outcome of the case. *Id.* ¶ 19; *see also Strickland*, 466 U.S. at 687–88. If the defendant "fails to establish either of these prongs, he cannot prevail on a claim of ineffective assistance of counsel." *State v. Smith*, 2012 UT App 338, ¶ 9, 291 P.3d 869 (quotation simplified).

¶11    In *LeBeau*, 2014 UT 39, 337 P.3d 254, the defendant was convicted of aggravated kidnapping, aggravated assault, and cruelty to an animal. *Id.* ¶ 1. The defendant challenged his sentence of life in prison without the possibility of parole for the aggravated kidnapping conviction, arguing that the "district court failed to properly consider whether the interests of justice warranted a lesser sentence as allowed for in Utah's aggravated kidnapping statute." *Id.* ¶¶ 1–2. The Utah Supreme Court noted that the legislature "added the interests-of-justice language to Utah's aggravated kidnapping statute in 2007 as part of a sweeping revision of the penalties associated with sexual offenses and kidnapping." *Id.* ¶ 29. The court then explained that the "interests of justice" inquiry "necessarily requires the court to consider the proportionality of the defendant's sentence in relation to the severity of his offense . . . [and] appropriately weigh a defendant's potential for rehabilitation." *Id.* ¶ 37 (quotation simplified).

¶12    The two factors for the proportionality analysis include "the seriousness of the defendant's conduct in relation to the severity of the sentence imposed" and "the severity of the sentence imposed in light of sentences imposed for other crimes in the same jurisdiction." *Id.* ¶ 41. The court clarified that the proportionality analysis requires more than weighing aggravating and mitigating circumstances. *Id.* ¶ 30. It then went on to explain that, when analyzing the defendant's rehabilitative potential, sentencing courts must consider all of the relevant factors. *Id.* ¶ 54. Although Utah appellate courts did not explicitly address *LeBeau*'s application to aggravated sexual

abuse cases until after Casper was sentenced, *see State v. Alvarez*, 2017 UT App 145, ¶ 2, 402 P.3d 191, for the purposes of this appeal, we assume, without deciding, that it applies.

¶13    Casper's argument that counsel should have provided evidence for a proportionality analysis under *LeBeau* fails because he cannot show that there was "no conceivable tactical basis for counsel's actions." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified). Counsel reasonably could have determined that prompting the court to engage in a *LeBeau* proportionality analysis would have been more harmful than beneficial.

¶14    First, directing the court to *LeBeau* and arguing that aggravated sexual abuse of a child carries a greater punishment than "significantly more serious crimes"—such as "murder"—would have been risky considering the strong language in *LeBeau* related to sexual abuse cases, especially those involving children. In *LeBeau*, the court stated that "sexual crimes, particularly those involving children, represent an especially heinous form of bodily insult" and that sexual crimes "intrude on the fundamental bodily integrity of the victim like no others short of murder." 2014 UT 39, ¶¶ 49–50. Had counsel directed the court to *LeBeau*, the court would have considered that language in light of Casper's conduct, including the aggravating circumstances, and could have determined that Casper should be sentenced to the presumptive fifteen years to life imprisonment.

¶15    Casper claims that the court did not provide aggravating circumstances to support the sentence. But the court was not required to find any aggravating circumstances to support the sentence, because aggravated sexual abuse of a child carries the presumptive sentence of fifteen years to life. Utah Code Ann. § 76-5-404.1(5) (LexisNexis 2017). Instead, the court was required to find mitigating circumstances that would justify the reduction of Casper's sentence, which it did. *Id.* § 76-5-404.1(6). In any event, the court specifically noted that it was "adding [the]

aggravating circumstances of causing substantial . . . psychological injury to the victims. [The crimes] involve two or more victims, and [Casper was] in a position of authority." These circumstances directly correlate to the circumstances identified in the sexual abuse of a child statute that provides that a defendant's conduct becomes aggravated when, among other circumstances, the defendant: "caused bodily injury or severe psychological injury to the victim during or as a result of the offense;" "prior to sentencing for this offense, was previously convicted of any sexual offense;" or "occupied a position of special trust in relation to the victim." *Id.* § 76-5-404.1(4)(b), (e), (h).

¶16    The court then stated that "it will be the order and judgment of the Court then on these two first-degree felonies that the maximum penalty be imposed," but "in the interest of justice," the court reduced his sentence to ten years to life based on a mitigating circumstance—Casper's mental health. It was therefore reasonable for defense counsel to avoid comparing aggravated sexual abuse of a child to murder, *see LeBeau*, 2014 UT 39, ¶¶ 49–50, or other crimes with different sentences, and instead focus on the mitigating circumstances—such as Casper's mental-health status, his lack of a prior criminal history, his willingness to engage in treatment, and his remorse —and the State's sentencing recommendation of a sentence of six years to life imprisonment.[3]

---

3. It appears that Casper is arguing that counsel should have pushed for a further reduced sentence because Casper's conduct aligned more with the elements necessary to convict of only sexual abuse of a child, "but because he was [related to the victims], his punishment jumped to 10 years to life." First, his punishment did not "jump[]" to ten years to life; it was reduced from the presumptive fifteen years to life. Second, Casper pleaded guilty to two of the four counts of aggravated sexual abuse of a child with the stipulated aggravator of being in a

(continued…)

¶17　A second tactical basis for counsel's decision is apparent from the record in that Casper and the State negotiated a plea deal in which part of the agreement for Casper to plead guilty to the two counts was for the State to recommend a reduced sentence of two consecutive terms of six years to life. Counsel therefore reasonably could have determined that he should focus the court's attention on the State's recommendation and that the recommendation could have been undermined if counsel directed the court to *LeBeau* and the proportionality analysis.

¶18　A third tactical basis for counsel not to ask for a proportionality analysis is that the court would then be required to consider *LeBeau*'s second factor regarding Casper's rehabilitative potential. *Id.* ¶ 37. This would have required the court to consider that Casper had admitted to previously putting his hand down a female neighbor's pants and touching her "private parts." Casper said he was aware of the "cyclical patterns of [his] crime[s]." He also acknowledged that he has impulse control disorder, and one of his therapists explained that Casper tested high on the sexual addiction scale and continues to "experience[] excessive thinking about sexual behavior, [have] opportunities to view pornography, and

---

(…continued)

position of special trust to the victims. In exchange, the State dismissed two other counts of aggravated sexual abuse of a child. And, as explained above, *see supra* ¶ 15, the court found other aggravating circumstances to support its decision not to reduce his sentence further to six years to life. By arguing that pleading guilty to two counts of aggravated sexual abuse of a child should be considered akin to pleading guilty to sexual abuse of a child—because the aggravating factor was only that he was in a position of special trust—and therefore the sentence should have been reduced even further would have only served to highlight the favorable plea deal and undermine Casper's apparent remorse for the harm he admits to have inflicted on the victims.

entertain[] sexual fantasies." All of this information would have alerted the court to Casper's poor rehabilitative potential.

¶19    We therefore conclude that defense counsel made a reasonable tactical decision not to ask the court to engage in a proportionality analysis under *LeBeau* and to instead focus on the mitigating circumstances and the State's recommendation of a reduced sentence of two consecutive terms of six years to life imprisonment. Because Casper has failed to establish that his counsel performed deficiently, we do not address his prejudice argument. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) (providing that courts need not address "both components of the [ineffective-assistance-of-counsel] inquiry if the defendant makes an insufficient showing on one"). Accordingly, we affirm.

————————