2008 UT 54

**STATE of Utah, Plaintiff and Petitioner,**

**v.**

**Gordon R. KING, Defendant and Respondent.**

No. 20060988.

Supreme Court of Utah.

Aug. 5, 2008.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., T. Langdon Fisher, Salt Lake City, for plaintiff.

Elizabeth Hunt, Salt Lake City, for defendant.

NEHRING, Justice:

## INTRODUCTION

¶1 For the second time we rule on a challenge to the composition of the jury that convicted Gordon King of aggravated sexual abuse of a child. On certiorari from the court of appeals, we previously held that Mr. King both failed to preserve his objection to the seating of two potentially biased jurors and failed to demonstrate why his oversight should be excused. We remanded the case to the court of appeals to consider whether the conduct of Mr. King's attorney that allowed the potentially biased jurors to be seated constituted ineffective assistance of counsel. The court of appeals held that it did and granted Mr. King a new trial. It concluded that Mr. King's counsel rendered deficient service to Mr. King by failing to adequately probe two jurors for potential bias before the jury was empaneled. The court of appeals then found that it could presume that the seating of the two suspect jurors prejudiced Mr. King. *State v. King*

*(King III)*, 2006 UT App 355, ¶16, 144 P.3d 222.

¶2 We again have granted certiorari, this time to review whether the court of appeals erred when it presumed that the failure of Mr. King's trial counsel to further investigate the potential biases of prospective jurors prejudiced Mr. King, thus relieving Mr. King of the obligation to prove that the presence of the two potentially biased jurors actually prejudiced him. We hold that it did and reverse.

## BACKGROUND

¶3 Mr. King was charged with aggravated sexual abuse of a child, a first degree felony, after his daughter's friend reported that Mr. King had inappropriately touched her during a sleepover at his home. Mr. King pled not guilty, and his case went to trial.

¶4 During the jury selection process, the trial judge read the contents of the information document to the prospective jurors. The information described the nature of the crime for which Mr. King was standing trial. The judge then asked the prospective jurors if anyone had "formed an opinion" about the case because it involved sexual abuse of a child. One person raised a hand. The judge then asked whether any of the prospective jurors "would be unable to be fair and impartial" if called upon to serve as a juror in a child sexual abuse case. The prospective juror who indicated she had formed an opinion about the case was joined by four more prospective jurors in giving affirmative responses to this question, bringing to five the total number of prospective jurors who had disclosed potential bias.

¶5 The judge then emphasized that while the crime with which Mr. King was charged might be "harder for us to hear about, listen to and deal with" than other offenses, the defendant had, at this stage of the proceedings, merely been charged with the crime and had not been convicted. After reiterating that the State bore the burden of proving Mr. King's guilt beyond a reasonable doubt, the judge asked, "Are you people of the opinion that, because of the mere nature of the case, you couldn't listen and be fair?"

Only the person who had already twice raised a hand did so again.

¶ 6 This prospective juror and those who questioned their ability to be fair and impartial were then asked follow-up questions to expose possible biases. Of this group of five prospective jurors, three doubted their ability to be fair and impartial because of their direct or indirect experience with child sexual abuse. The remaining two jurors did not identify any direct or indirect experience with abuse but believed the subject matter of the case would have an emotional impact on them that would interfere with their ability to be fair and impartial.

¶ 7 The trial judge asked the entire panel of prospective jurors if there was "anyone else who either ha[d] been a victim of abuse or ha[d] had a family member or close personal friend who ha[d] been the victim of abuse." Six additional prospective jurors indicated that they had. The trial judge asked these six jurors if their experiences with abuse "would interfere with [their] ability to be fair and impartial." One of the group indicated that it would. She was later dismissed for cause. The other five signaled their belief that they could be fair and impartial by not raising their hands in response to the judge's question.

¶ 8 After noting the names of the remaining five jurors who said they or someone they knew had been a victim of abuse, the trial judge asked them to step out of the courtroom and remain by the door so that she could individually question them to determine the existence or extent of bias. Of the five jurors who indicated that they thought they would be "fair and impartial" despite an experience with abuse, only three were questioned by the trial judge. The remaining two, jurors No. 2 and No. 18, were not separately questioned. Neither counsel for the defense nor counsel for the prosecution noticed the omission, and after the trial judge declared that the court had "probably talked to everyone else" who had indicated some kind of experience or exposure to abuse, the entire panel was then questioned by both sides. None of the questions directly related to the issue of abuse. Both sides passed the panel for cause and exercised their peremptory challenges. Jurors No. 2 and No. 18 were seated as members of the jury.

¶ 9 After the trial, the jury returned a guilty verdict on the lesser included offense of sexual abuse of a child, a second degree felony. The trial court reduced the conviction to third degree felony attempted sexual abuse of a child pursuant to Utah Code section 76–3–402. Mr. King appealed his conviction. He argued that the trial court erred by failing to individually question jurors No. 2 and No. 18. He also contended that his counsel provided ineffective assistance by permitting the potentially biased jurors to be seated.

¶ 10 The court of appeals reversed Mr. King's conviction. *State v. King (King I)*, 2004 UT App 210, ¶ 27, 95 P.3d 282. It held that the trial court failed to conduct a sufficiently searching inquiry into the potential biases of jurors No. 2 and No. 18. *Id.* The court of appeals did not reach the question of whether Mr. King's counsel was ineffective.

¶ 11 The State petitioned for certiorari. It faulted the court of appeals for granting Mr. King a new trial on an issue he had not preserved for appeal. We granted certiorari and agreed with the State that the court of appeals erred when it excused Mr. King's failure to preserve his objection to the seating of jurors No. 2 and No. 18. We held that the trial court did not commit plain error when it seated the potentially biased jurors, reversed the court of appeals, and remanded with instructions to consider Mr. King's ineffective assistance of counsel claim. *State v. King (King II)*, 2006 UT 3, ¶ 26, 131 P.3d 202.

¶ 12 The court of appeals followed our instructions and again reversed Mr. King's conviction. *King III*, 2006 UT App 355, ¶ 16, 144 P.3d 222. Applying the test for ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court of appeals held that Mr. King successfully established that the presence of jurors No. 2 and No. 18 could be traced to the ineffective assistance of Mr. King's counsel. *King III*, 2006 UT App 355, ¶ 9, 144 P.3d 222.

¶ 13 After concluding that the lawyer's representation of Mr. King was deficient, the court of appeals turned to the second element of *Strickland:* prejudice. The court held that the biases of jurors No. 2 and No. 18 could be presumed and that Mr. King was not, therefore, required to prove that the jurors were actually biased. *Id.* ¶ 13. Because the presence on a jury of jurors who are actually biased presumptively deprives a defendant of a fair trial, *United States v. Martinez–Salazar*, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the court of appeals found that the presence of jurors No. 2 and No. 18 prejudiced Mr. King and ordered a new trial. *King III,* 2006 UT App 355, ¶ 16, 144 P.3d 222. The State's second petition for certiorari followed. The question presented to us on this certiorari review is whether *Strickland* prejudice may be presumed when a lawyer fails to sufficiently probe prospective jurors who exhibit the potential for bias. We hold that it may not. We therefore reverse the holding of the court of appeals and remand to the trial court pursuant to Utah Rule of Appellate Procedure 23B for the purpose of determining whether either juror was actually biased against Mr. King.

## STANDARD OF REVIEW

■ ¶ 14 The court of appeals' determination that Mr. King may be presumed to have been prejudiced by the presence of jurors No. 2 and No. 18 on the jury was a legal ruling that we review for correctness. *State v. Leatherbury,* 2003 UT 2, ¶ 7, 65 P.3d 1180.

## ANALYSIS

■ ¶ 15 The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment also guarantees a criminal defendant the right to an unbiased and impartial jury. *Morgan v. Illinois,* 504 U.S. 719, 726, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). In this appeal, we take up the contention of Mr. King that he was denied his Sixth Amendment rights when his counsel failed to see to it that prospective jurors who may have revealed actual bias against him were further questioned about their bias.

¶ 16 The United States Supreme Court has extended the guarantees of the Sixth Amendment to defendants in state criminal actions through the Fourteenth Amendment to the United States Constitution. *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). That Court, however, has not spoken directly to Mr. King's Sixth Amendment claim, although it has repeatedly recognized that the seating of any juror who should have been dismissed for cause requires reversal. *United States v. Martinez–Salazar,* 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *Ross v. Oklahoma,* 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *Parker v. Gladden,* 385 U.S. 363, 366, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966).

¶ 17 In this case, the court of appeals expanded the Supreme Court's pronouncement regarding biased jurors in two ways, one horizontal and one vertical. It stretched the principle that the presence of an actually biased juror mandates reversal horizontally to reach jurors who exhibited not just actual bias but also to those who displayed the potential for bias. It extended the principle vertically by making jury bias reversal available not only through a challenge to the seating of a juror but as part of an ineffective assistance of counsel claim as well.

■ ¶ 18 Under *Strickland,* a defendant is denied his Sixth Amendment right to effective counsel if the attorney's performance was objectively unreasonable and if the attorney's deficient performance prejudiced the defendant. 466 U.S. at 687, 104 S.Ct. 2052. In this appeal, only the prejudice element is at issue. The Supreme Court has confirmed that a defendant suffers prejudice when he is denied a fair trial because a biased juror sat on the jury. *Martinez–Salazar,* 528 U.S. at 316, 120 S.Ct. 774. When the ineffective assistance of counsel results in the seating of a juror who is actually biased against the defendant, well-reasoned authority supports a finding that the prejudice required by *Strickland* will be presumed. *Hughes v. United States,* 258 F.3d 453, 463 (6th Cir. 2001). Consistent with the reasoning in

*Hughes,* which we find persuasive, had the deficient performance of Mr. King's counsel permitted an actually biased juror to be seated, we would presume that Mr. King's Sixth Amendment right to effective assistance of counsel had been violated. *See id.; see also Miller v. Webb,* 385 F.3d 666, 672 (6th Cir. 2004). We would, therefore, align ourselves with those courts that have endorsed a vertical extension of the Sixth Amendment guarantee of a fair and impartial jury to claims that the ineffective assistance of a defendant's counsel permitted the seating of an actually biased juror. We are aware, however, of no case from any jurisdiction supporting the court of appeals' horizontal expansion of the Sixth Amendment to require reversal of a guilty verdict based on possible juror bias. Furthermore, the court of appeals' horizontal stretching of the bounds of jury bias error is illogical and would lead to perverse results.

¶ 19 No court has found, or has Mr. King claimed, that jurors No. 2 and No. 18 were actually biased. Rather, each had, through their responses to the trial judge's questions, made disclosures that suggested potential bias. In response to Mr. King's attack on the propriety of seating jurors No. 2 and No. 18, we observed that the type of question posed to the venire persons concerning their experiences with sexual abuse was one which, if answered affirmatively, would raise "a question of potential bias." *King II,* 2006 UT 3, ¶ 22, 131 P.3d 202 (internal quotation marks omitted). Mr. King had not, however, preserved the issue of juror bias for appeal. *Id.* ¶ 18. As a consequence, we reviewed the trial judge's decision to seat jurors No. 2 and No. 18 for plain error and required Mr. King to establish that he suffered harm as a result of the presence of jurors No. 2 and No. 18 on the jury. *Id.* ¶ 21. We held in *King II* that he had not met his burden of demonstrating that the trial judge erred. *Id.* ¶ 24. On remand to consider a claim of ineffective assistance of counsel, the court of appeals concluded that it was not necessary for Mr. King to show prejudice because the presence of potentially biased jurors "[bore] the hallmarks of those rare situations specifically mentioned in *Strickland* where prejudice

may be properly presumed." *King III,* 2006 UT App 355, ¶ 10, 144 P.3d 222.

¶ 20 The law resorts to presumptions when it is short on facts and feels compelled to assign to one party or another the consequences that flow from the uncertainty caused by incomplete facts. Presumptions do not inhabit a world in which everything is subject to empirical verification. To be sure, even if empirical verification were possible, the need for normative judgments would endure, but not the often vexing policy choices of burdening someone with the risks created by unknown circumstances.

¶ 21 Presumptions in the realm of criminal law are grounded in the values and aspirations of a nation committed to the principle of equal justice under law. Thus, when we declare that a criminal defendant is presumed innocent, we reaffirm through that presumption our commitment to the principle that a government's monopoly on coercive power must be constrained by closely guarded guarantees of individual liberty. The presumption of innocence underscores the role of presumptions as a substitute for facts. When jurors are instructed to presume a defendant innocent at the beginning of a trial, they possess no facts about the case. The presumption of innocence serves as a temporary stand-in for the facts that will later emerge during the trial. Standing sentinel against the arbitrary exercise of the power of the State, the presumption of innocence honors the dignity and autonomy of the individual.

¶ 22 We recently discussed the seminal values that inform presumptions in the criminal law when we explained the significance of the "beyond a reasonable doubt" standard for establishing guilt. We stated,

The degree of certainty of guilt that we insist be held by those entrusted with judging the fate of persons charged with crimes before we will permit the State to wield its power to punish is not only a measure of evidence, but also in a more fundamental sense a gauge of our nation's conscience. The measure of certainty the law demands before finding guilt reflects the balance we are willing to strike between ensuring that all of the guilty are

brought to justice and preventing the conviction and punishment of the innocent. *State v. Reyes,* 2005 UT 33, ¶ 11, 116 P.3d 305.

¶ 23 Of course, a criminal defendant is not entitled to the benefit of every presumption. The array of procedures that comprise a criminal prosecution, procedures that collectively fall within the category of procedural due process of law, have earned our confidence for the fairness of the outcomes they produce. In a country like ours that is committed to the rule of law, the presence of reliable criminal procedures provides, through their consistent application, a substantial measure of confidence in the correctness of verdicts rendered after trials featuring competing versions of events. The extent of our confidence that our criminal procedures, when properly followed, yield a just result is reflected in yet another presumption, a presumption of regularity that, when applied to a criminal conviction, benefits the State. *See, e.g., Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Lafferty v. State,* 2007 UT 73, ¶ 50, 175 P.3d 530; *State v. Von Ferguson,* 2007 UT 1, ¶ 13, 169 P.3d 423; *State v. Robison,* 2006 UT 65, ¶ 21, 147 P.3d 448; *State v. Triptow,* 770 P.2d 146, 149 (Utah 1989).

¶ 24 So great is our trust in the overall reliability of criminal procedures that even in those instances where procedural requirements have been deviated from or overlooked, we typically place on a defendant the obligation to demonstrate that the error prejudiced him. *See, e.g., State v. Powell,* 2007 UT 9, ¶ 21, 154 P.3d 788; *State v. Robertson,* 932 P.2d 1219, 1227 (Utah 1997); *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992).

¶ 25 Choosing which party a presumption will benefit is influenced by what is at stake for each party and by which party would be likely to benefit if the unknown facts became known. When the consequence of drawing the wrong conclusion about the meaning of insufficient facts jeopardizes substantially the life or liberty of a criminal defendant, the law is more likely to rescue the defendant by adopting a presumption that the inference to be drawn from the meager facts must be one that best serves the interests of the defen-

dant. Conversely, where a criminal defendant would be unlikely to benefit were the unknown facts to be uncovered, the law will more likely provide a presumption in favor of the State.

 ¶ 26 The court of appeals found the seating of jurors No. 2 and No. 18 resulting from trial counsel's deficiency to be a circumstance in which the defendant was entitled to benefit from a presumption of prejudice. It is against this background of the nature and function of legal presumptions generally that we examine whether the court of appeals properly extended a presumption of prejudice to Mr. King.

¶ 27 Although this appeal concerns a claim of potential and not actual juror bias—an important distinction upon which we will elaborate below—an examination of the Sixth Amendment jurisprudence involving actual juror bias provides a valuable perspective into the many presumptions that form the structural framework of that body of law.

 ¶ 28 A defendant who is convicted of a crime by a jury comprised of even one member who has exhibited actual bias is entitled to a new trial. *Martinez–Salazar,* 528 U.S. at 316, 120 S.Ct. 774. This principle of law is grounded in the presumption that the presence of a biased juror so undermines the fairness and impartiality of the verdict that the Sixth Amendment right to a fair trial can be preserved only by setting aside the conviction. That the participation of an actually biased juror in a guilty verdict causes a Sixth Amendment violation meriting a new trial is, however, neither inevitable nor obvious. The conclusion that an unfair trial results from the presence of a biased juror presumes that the juror's vote was based on their bias rather than being based on a determination reached following an objective application of the law to the facts. It is quite possible, however, that the opposite was in fact the case. Embedded within the jury system are two safeguards designed to protect a defendant against being convicted by even the most shamelessly biased juror: the requirements that a jury be comprised of a minimum of four jurors and that the verdict be unanimous. Utah Const. art. I, § 10. Even

were a biased juror to advocate for an outcome that was based on his bias rather than on an objective application of the law to the facts, because the verdict must be unanimous, he would have to convince all of his fellow jurors to do the same. A conviction resulting from votes cast based on bias could be prevented by only one juror insisting on properly weighing the evidence.

¶ 29 One might plausibly contend that even where a guilty verdict was reached with the vote of an actually biased juror, the convicted defendant should be required to prove that the juror's bias actually influenced their vote or that the constitutional obstacles to a biased juror holding sway failed, resulting in prejudice to the defendant. The law has chosen instead to relieve the defendant of the burden of showing prejudice by presuming it.

¶ 30 *Strickland's* discussion of prejudice in the context of ineffective assistance of counsel also endorsed the use of presumptions of prejudice where its presence "is so likely that case-by-case inquiry into prejudice is not worth the cost." 466 U.S. at 692, 104 S.Ct. 2052. We, too, have recognized the propriety of relying on the presumption of prejudice when the barriers to proof are unreasonably high. In *Parsons v. Barnes*, we stated, "pursuant to our 'inherent supervisory power over the courts,' we may presume prejudice ... where it is 'unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice.'" 871 P.2d 516, 523 n. 6 (Utah 1994) (quoting *State v. Brown*, 853 P.2d 851, 857, 859 (Utah 1992)).

¶ 31 The court of appeals looked to these statements justifying a presumption of prejudice when the practical problems of proving it are too great to lend authority to its conclusion that Mr. King was entitled to the presumption. The court summed up its view, noting that "presuming prejudice rather than requiring King to demonstrate the existence of palpable prejudice is necessary as a practical matter in this case." *King III*, 2006 UT App 355, ¶ 13, 144 P.3d 222.

¶ 32 We concede that considerable obstacles are likely to confront a defendant faced with proving prejudice when much of the relevant evidence resides with the jurors themselves. Indeed, in *King II*, we acknowl-

edged that it is an extremely difficult task to remedy juror bias post-verdict. 2006 UT 3, ¶ 17, 131 P.3d 202. Difficulty in proving prejudice is not, however, the sole or controlling consideration in our analysis of whether to extend a presumption of prejudice to defendants who assert that a potentially biased juror was permitted to vote for conviction.

■ ¶ 33 Not every claim of prejudice accompanied by obstacles to proof can claim a right to a presumption. Only those circumstances that by their nature make prejudice "so likely that case-by-case inquiry into prejudice is not worth the cost" will justify a presumption. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. To require a defendant to pursue a potentially costly inquiry into prejudice is appropriate when prejudice is less evident, less likely. We conclude that prejudice is substantially more likely to be present when an actually biased juror contributes to a guilty verdict than when a potentially biased juror is allowed to pass judgment on a defendant.

¶ 34 Where actual bias is present, presumptions are called upon to stand in place of factual answers to two secondary questions concerning the effects of a juror's bias: did the juror's bias influence his vote for conviction and did his bias influence the votes of other jurors? Because the major premise, actual bias, is grounded in fact, we may presume with greater confidence that the answer to both questions is "yes." By contrast, where a juror is merely suspected of bias, the presumption we are called upon to invoke concerns not only the effect of bias on the deliberations of the biased juror and his fellow jurors but also presumes the major premise—the actual bias of the juror. Where both the existence of juror bias and the effect of that possible bias are assumed, a presumption of prejudice is not justified because there is not a sufficient likelihood that prejudice in fact resulted.

¶ 35 We have little fear that by declining to remove the distinction between actual and potential bias from the context of the presumption of prejudice under *Strickland* we will lighten the duty of judges and attorneys to investigate and expose with vigor the bias-

es of prospective jurors at the jury selection stage of trials. To the extent that defendants are disadvantaged by being required to demonstrate prejudice when their counsel's deficient performance allows a potentially biased juror to be seated, that consequence is outweighed by what we perceive to be the considerable untoward problems that would befall courts as they attempt to discern in a principled way what constitutes suspicion of bias sufficient to trigger the presumption of prejudice and require a new trial. While identifying actual bias is not a task free from challenges, it is one with which courts have acquired experience over time that can be drawn upon to discriminate between cases where a presumption of prejudice can be applied with confidence and cases where such a presumption would be too speculative.[1]

¶ 36 By recognizing a presumption of prejudice only when a defendant has established the presence of actual bias, we also bring consistency to our review of both direct challenges to the presence of potentially biased jurors and challenges to potentially biased jurors that exist within claims of ineffective assistance of counsel. In the course of rejecting Mr. King's assertion that he was entitled to plain error review of his jury bias claim in *King II*, we held that the trial judge had not abused her discretion when she declined to sua sponte conduct further questioning of jurors No. 2 and No. 18. 2006 UT 3, ¶ 24, 131 P.3d 202. It was apparent to us that the trial judge did not deviate from the guidance

we provided in *State v. Litherland* for dealing with potential juror bias. In *Litherland,* we stated,

> It is generally inappropriate for a trial court to interfere with counsel's conscious choices in the jury selection process, notwithstanding the existence of a reasonable basis for objecting to those jurors. Only where a juror expresses a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror.

2000 UT 76, ¶ 32, 12 P.3d 92.

¶ 37 We found that the jurors' voir dire responses fell short of being " 'so strong or unequivocal as to inevitably taint the trial process.' " *King II*, 2006 UT 3, ¶ 24, 131 P.3d 202 (quoting *Litherland*, 2000 UT 76, ¶ 32, 12 P.3d 92). Were we to apply the presumption of prejudice to direct challenges to the seating of potentially biased jurors, we would overturn *Litherland* and *King II* and remove from consideration strategic choice as a reason for trial courts not to interfere with the jury selection process.

¶ 38 The effect of extending the *Strickland* presumption of prejudice to errors of counsel that allow the seating of potentially biased jurors would be to distort a well-developed body of law that strikes a proper balance between the interests of the adversarial pro-

---

1. The court of appeals drew from the trial record evidence to defend its invocation of a presumption of prejudice that it interpreted as showing that it was more likely than not that jurors No. 2 and No. 18 were actually biased. The court stated,

> [O]f the nine prospective jurors indicating bias who were questioned further in this case, *none* of them served on the jury. And the majority of them—six of the nine—were dismissed for cause, while two more were removed by peremptory strikes. Given this statistical reality, it seems highly unlikely that after further questioning the two overlooked jurors would have both been allowed to sit on the jury—both of them being passed for cause and both of them avoiding peremptory strikes.

*King III*, 2006 UT App 355, ¶ 11 n. 4, 144 P.3d 222 (emphasis in original). While we caution that given our decision to remand this matter for a rule 23B hearing, neither the court of appeals' comments on the merits of Mr. King's claim of prejudice nor our critique of those comments are relevant, we find the court of appeals' "statistical reality" to be flawed. What the record actually reveals is that only one of the six prospective jurors who indicated that they, a family member, or a friend had experienced abuse further indicated that their experience would impair their ability to be fair and impartial. This prospective juror was dismissed for cause. Three of the remaining five jurors were examined individually by the trial judge. All three were unequivocal in their beliefs that they could be fair and impartial despite their experiences with abuse. The trial judge nevertheless dismissed one of the three because of her "body language." The State exercised a peremptory challenge to remove a second. The third did not sit on the jury because her high number among the prospective jurors made it impossible for her to be selected. Unlike the court of appeals, we are at a loss to draw any reliable statistical conclusions from this state of affairs.

cess and the guarantees of a fair trial in the jury selection process.

¶ 39 While we determined in *King II* that the trial judge did not err when she made no further inquiry into the potential bias of jurors No. 2 and No. 18, we remanded the case to the court of appeals to consider Mr. King's claims that his trial counsel was deficient for failing to see to it that further inquiry took place. 2006 UT 3, ¶ 25, 131 P.3d 202. We have now held that the court of appeals erroneously decided the question on remand by applying a presumption of prejudice to counsel's errors that allowed the seating of potentially biased jurors No. 2 and No. 18. To prevail on his claim that his counsel was deficient, Mr. King must demonstrate actual prejudice. In this setting, actual prejudice is synonymous with actual juror bias.

¶ 40 We agree with the State's proposal that rule 23B(e) of the Utah Rules of Appellate Procedure offers the most effective method to determine if jurors No. 2 and No. 18 were actually biased. We promulgated rule 23B to provide a fair and expeditious means to find facts relating to claims of ineffective assistance of counsel.

¶ 41 In Utah, we have consistently held that rule 23B allows for the defense or prosecution to move for findings necessary to a determination of a claim of ineffective assistance of counsel. *Litherland,* 2000 UT 76, ¶ 17 n. 7, 12 P.3d 92; *see also* Utah R.App. P. 23B. Moreover, rule 23B allows an appellate court to remand for a hearing on its own motion, provided " 'the claim has been raised and the motion would have been available to a party.' " *State v. Hopkins,* 1999 UT 98, ¶ 13 n. 1, 989 P.2d 1065 (quoting Utah R.App. P. 23B(a)); *see also State v. Garrett,* 849 P.2d 578, 581 (Utah Ct.App.1993). The availability of such a motion is based "upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." Utah R.App. P. 23B(a). A remand on its own motion "allows appellate court[s] to accommodate unusual cases or situations." *Litherland,* 2000 UT 76, ¶ 17 n. 7, 12 P.3d 92.

¶ 42 The Supreme Court determined that posttrial hearings can be an effective remedy for allegations of juror partiality in federal cases. *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In *Phillips,* where a juror submitted a job application with the District Attorney's Office during the trial, the Supreme Court held that a posttrial hearing to question the juror about his potentially biased actions was an adequate means to determine actual bias. *Id.* at 212, 102 S.Ct. 940.

¶ 43 Rule 23B is "an appropriate procedural tool" to remedy any deficiencies in the record caused by counsel's alleged ineffective assistance. *Litherland,* 2000 UT 76, ¶ 16, 12 P.3d 92. It is especially appropriate in this case to determine if the jurors who were not further questioned would have been biased despite their claims that they would not.

¶ 44 Mr. King argues that such a posttrial hearing would violate Utah Rule of Evidence 606(b), which prohibits queries into jury deliberations. Although an after-the-fact inquiry into jury bias presents unique evidentiary challenges, we do not agree that rule 606(b) renders futile Mr. King's quest for the truth about the ability of jurors No. 2 and No. 18 to be fair and impartial.

¶ 45 Utah Rule of Evidence 606(b) prohibits "virtually all inquiries into the jury deliberation process." *State v. Santana–Ruiz,* 2007 UT 59, ¶ 33, 167 P.3d 1038. These restrictions are motivated by a desire to insulate the jury and protect jurors from being harassed by defeated defendants. It does not allow for any questioning of the jury about " 'any matter or statement occurring during the course of the jury's deliberations.' " *State v. Lucero,* 866 P.2d 1, 4 (Utah Ct.App.1993) (quoting Utah R. Evid. 606(b)).

¶ 46 A rule 23B hearing is not, however, a query into jury deliberations. It is instead a forum to conduct posttrial voir dire. We are mindful that there is no way to reproduce exactly the environment of pretrial voir dire in a rule 23B hearing. Witnesses will inevitably be influenced by the fact that a trial and jury deliberations occurred. We are satisfied, however, that despite the difficulty it imposes on Mr. King, a rule 23B hearing is the appropriate forum to address his claims of jury bias.

## CONCLUSION

¶ 47 In conclusion, we hold that failure of Mr. King's counsel to further investigate the potential bias of prospective jurors does not warrant a presumption of prejudice. Where both the existence of juror bias and the effect of that possible bias are assumed, a presumption of prejudice is not justified because there is not a sufficient likelihood that prejudice in fact resulted. In order to prevail on his claim of ineffective assistance of counsel, Mr. King must show that his counsel's actions prejudiced him because those actions allowed the seating of an actually biased juror. A rule 23B hearing is the appropriate forum for determining whether either juror No. 2 or juror No. 18 was actually biased because of their prior experiences with sexual abuse. We therefore reverse the holding of the court of appeals and remand to the trial court to conduct a hearing pursuant to Utah Rule of Appellate Procedure 23B to determine whether jurors No. 2 and No. 18 were biased.

¶ 48 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.