, Memorandum Decision
BENCH, Senior Judge:
¶1 Paul Dubrae Waldoch appeals his convictions of one count of object rape, a first-degree felony, and two counts of forcible sexual abuse, each a second-degree felony. We affirm.
¶2 Waldoch first asserts that the evidence was insufficient to support a fmdmg of *582 penetration and therefore could not support a conviction for object rape. "In assessing a claim of insufficiency of the evidence, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury" and will "reverse only when the evidence; so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." State v. Nielsen, 2014 UT 10, ¶ 30, 326 P.3d 645 (citations .and internal quotatioh marks omitted). -
18 A person commits obJect rape when the person,
without the victim's consent, causesﬂthe penetration, however slight, of -the genital ror anal opening of another person who is 14 years of age or older, by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals, with intent to cause substantial emotional or bodily pain to the victim or with the intent to arouse or gratify the sexual desire of any person.
Utah Code Ann. § 76-5-402.2(1) (LexisNexis Supp. 2014). Utah case law defines "penetration" 'as "entry between the outer folds of the labia." State v. Simmons, 759 P.2d 1152 1154 (Utah 1988).
T4 At trial, the victim testified that Wal-doch put his finger "into" her vagina and further explained, "He stuck his finger inside of me, finger or fingers, I'm not sure. [Hle kept sticking his finger inside me and rubbing me really hard." Likewise, in her statement in the police report, the victim emphasized, "He did penetrate me with his fingers,..." The physician's assistant (PA) who examined the victim after the assault testified that the victim reported "manual" vaginal penetration, specifically, that «Wal-doch's "[flingers penetrated [her] vaginal area." Although the PA's report indicated that the victim had "hesitated to come in reporting because there was no actual penetration," the PA clarified at trial that the statement "was made in reference to lack of penile penetration." The PA pointed out that on the emergency room form he had cireled "vaginal penetration" and then handwritten next to it "with hand." A nurse who participated in the exam and collected DNA evidence testified that she observed an abrasion .on the outside of the victim's labig and another on the, inside of her labia, . The nurse testified that the victim told her Wal-doch had "penetrated" her vagina with his hand and further testified that the victim's injuries were consistent with the victim's de-seription of the assault. And on the forensic report form, the nurse indicated that there was penetration "by hand to vagina." The contrary evidence emphasized by Waldoch-the fact that he was exeluded as a contributor to a saliva sample taken from the victim's neck, the inconsistencies in the PA's report regarding penetration, and the testimony of Waldoch's expert witness that the victim's injuries were inconsistent with penetration[2] -does not make the evidence supporting the verdict so "inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" regarding the penetration element. See Nielsen, 2014 UT 10, ¶ 30, 326 P.3d 645 (emphasis added) (citation and internal quotation marks omitted). Rather, that evidence presented a credibility question for the jury.[3]
15 Waldoch next argues that the trial court erred in allowing a husband and wife to serve together on the jury [4] and that the trial court did not adequately admonish the jury not to discuss the cage. These issyes were *583 not preserved for our review. See State v. Holgate, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a : general rule, claims not raised before the trial court may not be raised on appeal."). Thus, we decline to address them exeept to the extent that Waldoch has asserted that his claims fall under an exception to the preservation rule-plain error, ineffective assistance of counsel, or exceptional cireum-stances. See State v. Cram, 2002 UT 37 ¶ 4, 46 P.3d 230.
T6 Although Waldoch mentions these exceptions in passing, his analysis of how those exceptions might apply to this case is inadequate. See State v. Thomas, 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed."). As to his plain error argument, he merely asserts that the trial court should not have allowed the husband and wife to serve together but fails to explain why this alleged error should have been obvious to the trial court. His ineffective assistance and exceptional cireumstances arguments are likewise cursory: he baldly asserts that allowing a husband and wife to serve on a jury together is "a rare procedural anomaly" and that trial counsel erred "in allowing a husband and wife [to] serve together on the jury without objecting or insisting that the jury be admonished more completely," but he does not develop those assertions or cite supporting authority. See Utah R. App. P. 24(a)(9) (indicating that an appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on").
T7 In any event, Waldoch has failed to establish that he was prejudiced as a result of the husband and wife serving together or the trial court's failure to admonish the jury before short recesses, see Utah R. Crim. P. 17(k) (requiring the trial court to admonish the jury at "each recess of the court" "not to converse among themselves or to converse with, or suffer themselves to be addressed by, any other person on any subject of the trial" and "not to form or express an opinion thereon until the case is finally submitted to them"). The trial court admonished the jury not to talk about the case before a ten-minute break during jury selection, before a lunch break following jury selection, in the opening jury instructions, at the end of the first day of trial, and before a lunch break on the second day of trial, Only the opening jury instructions included an admonition not to prematurely form an opinion. The trial court did not admonish the jury at all prior to several short recesses during the course of the two-day trial or at the close of evidence.
18 While the trial court did not strictly comply with rule 17(k), we are not convinced that prejudice should be presumed in this case, as Waldoch urges. See State v. Maestas, 2012 UT 46, ¶52, 299 P.3d 892 ("Automatically granting a new trial for any instance where the court fails to admonish the jury before a recess fails to take into account whether, and to what extent, the jury has been properly admonished by the court in other instances. If the admonition is not given but the harm that it was designed to forestall never occurs, it would be pointless to order a new trial simply to have the [admonition] given." (alteration in original) (citation and internal quotation marks omitted)). . The jurors were given a complete and detailed admonition in the opening jury instructions .and were instructed on several additional occasions in the equrse of the two-day trial not to discuss the case among themselves, They were also informed that the same mstructmn would apply to "any other recess." In the course of the two-day trial, "the jury would have had little opportunity to forget prior admonitions," see id. 153, and Waldoch has pointed to "nothing in the record to indicate that the failures to admonish played any role in the [jurors'] conduct," see id. 154. Likewise, he has failed to establish that he was prejudiced by the husband and wife sitting together, both because there is nothing to suggest that they ignored the admonitions they were given or influenced one another and because only one spouse actually sat on the final jury. See State v. Sessions, 2014 UT 44, ¶¶ 50, 52, 342 P.3d 738 {explaining that to establish prejudice in the *584 context of jury selection, a defendant must show that a juror was "actually biased"); accord State v. King, 2008 UT 54, ¶ 47, 190 P.3d 1283.
T9 Finally, Waldoch asserts that the prosecutor committed misconduct by inappropriately appealing to the jury's emotions. See State v. Campos, 2013 UT App 218, ¶ 52, 309 P.3d 1160. He also asserts that the trial court should have admonished the jury to disregard statements by the prosecutor appealing to emotion. These issues were not preserved for appeal,[5] and Waldoch has again failed to adequately brief them in the context of plain error or ineffective assistance of counsel. Thus, we decline to consider Wal-doch's prosecutorial misconduct claims.
10 We conclude that the evidence was sufficient to support a finding of penetration and therefore to support the jury's guilty verdiet on the object rape charge, We further determine that Waldoch's arguments regarding the trial court's admonitions to the jury, jury selection, and alleged prosecutorial misconduct are unpreserved and inadequately briefed. We therefore affirm his convie-tions.

. Waldoch's expert opined, "Penetration occurs once you are through the hymenal rim into the vagina" and then explained, "There's no injury and no evidence-no physical evidence of any penetration in the hymen or in the vagina at all on the exam." But because the expert defined penetration more narrowly than does Utah law, the expert's testimony that the victim's injuries were inconsistent with pehetration is not particularly helpful.

. Waldoch's argument suggesting that the victim's injuries were consistent with consensual «activity likewise fails to convince us that the fury could not have found lack of consent beyond a reasonable doubt based on the victim's testimony,

. The wife was impaneled as an alternate juror * and was ultimately dlsmlssed before jury deliberations.

, Although defense counsel asked to approach the bench in the middle of the prosecutor's closing argument, no objection was made on the record and there is no record of the discussion at the bench.