2019 UT App 116

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JULIO ALPHONSO DOMINGUEZ,
Appellant.

Opinion
No. 20170618-CA
Filed July 5, 2019

Second District Court, Ogden Department
The Honorable Scott M. Hadley
No. 161900320

Troy L. Booher and Freyja R. Johnson, Attorneys
for Appellant

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1　　Julio Alphonso Dominguez appeals his conviction of aggravated burglary. We affirm.

## BACKGROUND

¶2　　Dominguez went to a club with three male friends—his eventual codefendants Eric Duran, Davy Ray Martinez (D. Martinez), and Jaime Martinez (J. Martinez)—and two female friends. The group met Victim for the first time at the club. Victim had been drinking heavily. Victim invited the group,

along with another woman (Witness) and her two male friends to come to his apartment to continue drinking.

¶3    While walking to Victim's apartment from the car, Victim put his arm around one of Dominguez's female friends and touched her breast.[1] This upset J. Martinez, who told Victim not to touch his "girl." Victim made some form of apology, which apparently diffused the situation, and the group continued to Victim's apartment.

¶4    When the group arrived at Victim's apartment, they continued drinking. Victim was pushy with Dominguez and his friends, insisting that they "sit down" when they did not want to and telling them they could not play music on their phones. According to Dominguez, Victim then began goading them, stating, "You guys think you're so bad. I bet I could take all four of you on." He then pushed Duran, who retaliated by punching Victim. The fight escalated, and all four codefendants attacked Victim, punching and kicking him in the face and body. At some point, the fighting stopped long enough for Victim to run into his bedroom and lock the door.

¶5    When the fight between the men first began, and before Victim escaped to his bedroom, Dominguez's two female friends were in the bedroom. At some point during the fighting, they left the bedroom and apparently saw the fight going on in the hallway. Dominguez and one of the women testified that the two women ran back into the bedroom when they saw the fighting and were inside the room when Victim ran in and locked the door behind him. In contrast, Victim and Witness testified that the women did not go back into the bedroom and were outside the room when Victim locked himself inside. And

---

1. Testimony at trial conflicted as to whether the touching was intentional or unintentional.

another witness, one of Witness's male friends, testified that he did not see anyone else in the bedroom when Victim shut the door.

¶6    After Victim locked himself in his bedroom, the codefendants broke down the door. According to Dominguez, their purpose for breaking down the door was to rescue the two women because they could hear the women screaming and were worried about their safety due to Victim's earlier aggressiveness and his touching one of the women. When the door gave way, the codefendants rushed in and began punching and kicking Victim again.

¶7    Eventually, the codefendants finished beating Victim and ran out of the apartment. When they left, Witness went into the bedroom to check on Victim. While she was there, Duran returned to the apartment. According to Witness, Duran held up Victim's keys and told him, "We've got your keys. Give me your wallet." Victim began to pull out his wallet, and Witness stood in the door and told Duran to leave. He responded, "Move, bitch, I'm going to stab this fool." Witness told him, "Nobody's stabbing nobody," at which point D. Martinez "walked up . . . behind" Duran and punched Witness in the face. Witness fell to the floor and blacked out. When she regained consciousness, Dominguez was in the room, and she saw him punch Victim three more times.

¶8    All four codefendants were charged with aggravated burglary based on the allegation that they broke into the bedroom for the purpose of assaulting Victim, along with lesser included offenses of assault. Duran and D. Martinez were also charged with aggravated robbery, and D. Martinez was charged with an additional assault in connection with the allegation that he hit Witness.

¶9    Following the incident, Witness gave a statement to police regarding the location of Dominguez's two female friends

during the fighting. She stated, "The girls were in the back bedroom and ran out when the boys went in the bedroom."[2] At trial, defense counsel confronted Witness with this statement, attempting to impeach her trial testimony that the women left the room before Victim locked himself inside. Witness explained the discrepancy by clarifying, "What I meant by 'running out,' is running out of the apartment."

¶10   Prior to trial, the court granted a motion in limine to exclude Dominguez's criminal record from the State's case-in-chief. Nevertheless, at one point in the trial, one of the police officers who investigated the case (Officer) was asked, "[D]id you run Julio Dominguez's history and access his driver's license photograph?" Officer responded, "I don't remember exactly how I was able to identify him. I believe it was through his mug shot that we have on file." Defense counsel objected, and the court conducted a discussion at the bench off the record. The prosecutor then continued with a different line of questioning. Defense counsel subsequently moved for a mistrial. The court denied the motion, concluding that although the statement was clearly inadmissible and potentially prejudicial, Officer's statement was inadvertent and any damage was mitigated

---

2. We quote the statement as recited by defense counsel in his questioning of Witness, since that is the statement contained in the record on appeal. But we acknowledge, as discussed further below, *see infra* ¶¶ 26–29, that there is a question as to the accuracy of the statement. According to Dominguez's appellate counsel, the recording of the statement demonstrates that Witness's actual statement to police was, "They were in the back of the bedroom, and then once the boys all got in the bedroom, the girls ran out and went out probably to the car, I'm guessing." Dominguez seeks a remand pursuant to rule 23B of the Utah Rules of Appellate Procedure to have the recording be made part of the appellate record. *See infra* ¶ 14.

because defense counsel did not draw attention to it and the prosecution moved to a different line of inquiry.

¶11 Dominguez's counsel requested a jury instruction on defense of others, and the primary defense asserted at trial was that Dominguez and his codefendants were justified in breaking down Victim's bedroom door because they did so with the purpose of protecting the women, who were locked in the room with Victim. Counsel approved the following jury instruction:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that force is necessary to defend himself or a third person against such other's imminent use of unlawful force.
>
> In determining imminence or reasonableness, the trier of fact may consider, but is not limited to, any of the following factors:
>
> (1) the nature of the danger;
>
> (2) the immediacy of the danger;
>
> (3) the probability that the unlawful force would result in death or serious bodily injury;
>
> (4) the other's prior violent acts or violent propensities; and
>
> (5) any patterns of abuse or violence in the parties' relationship.
>
> A person does not have a duty to retreat from the force or threatened force stated above in a

place where that person has lawfully entered or remained.

A person is not justified in using force if the person was the aggressor or was engaged in a combat by agreement, unless the person withdraws from the encounter and effectively communicates to the other person his intent to do so and, notwithstanding, the other person continues or threatens to continue the use of unlawful force.

The defendant is not required to prove that the defense applies. Rather, the State must prove beyond a reasonable doubt that the defense does not apply. The State has the burden of proof at all times. If the State has not carried this burden, the jury should find the defendant not guilty.

Counsel also approved the placement of the defense-of-others instruction at the end of the instructions providing definitions for various terms rather than within the instructions setting forth the elements of the crime with which Dominguez was charged.

¶12 Following a three-day trial, in which the codefendants were tried together, the jury found all four codefendants guilty of aggravated burglary but acquitted Duran and D. Martinez of the other charges. Dominguez was sentenced to ten years to life in prison for aggravated burglary. He now appeals.

ISSUES AND STANDARDS OF REVIEW

¶13 Dominguez first argues that his counsel provided ineffective assistance by failing to request a jury instruction explicitly linking the defense-of-others instruction to the aggravated burglary charge. "An ineffective assistance of

counsel claim raised for the first time on appeal presents a question of law." *State v. Perry*, 2009 UT App 51, ¶ 9, 204 P.3d 880 (quotation simplified).

¶14 Dominguez next asserts that counsel was ineffective for inaccurately quoting Witness's police statement when attempting to impeach her and for failing to confront her with her recorded police statement. Because the record on appeal does not contain the recorded statement, Dominguez has requested that we remand the case pursuant to rule 23B of the Utah Rules of Appellate Procedure to permit the trial court to supplement the record with additional findings. In determining whether rule 23B remand is appropriate, we must assess whether Dominguez has made "'a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective.'" *See State v. Griffin*, 2015 UT 18, ¶ 17, 441 P.3d 1166 (quoting Utah R. App. P. 23B(a)).

¶15 Finally, Dominguez challenges the trial court's denial of his motion for mistrial. "A trial court's denial of a motion for a mistrial will not be reversed absent an abuse of discretion." *State v. Wach*, 2001 UT 35, ¶ 45, 24 P.3d 948.

ANALYSIS

I. Counsel Was Not Ineffective for Not Objecting to the
Defense-of-Others Jury Instruction.

¶16 Dominguez first argues that his counsel was ineffective for failing to request jury instructions—or at least better placement of jury instructions—that would explicitly link the defense-of-others affirmative defense to the aggravated burglary charge. To prevail on grounds of ineffective assistance of counsel, a defendant must demonstrate, first, "that counsel's performance was deficient, in that it fell below an objective

standard of reasonable professional judgment" and, second, "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

¶17   "It is fundamental that the State carries the burden of proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue." *State v. Low*, 2008 UT 58, ¶ 45, 192 P.3d 867 (quotation simplified). Nevertheless, we have previously rejected the argument that the State's burden to disprove an affirmative defense must be incorporated into the elements instruction as opposed to being listed in a separate instruction.[3] *See State v. Painter*, 2014 UT App 272, ¶¶ 7–8, 339 P.3d 107; *State v. Lee*, 2014 UT App 4, ¶ 24, 318 P.3d 1164.

¶18   Dominguez asserts that this case is distinguishable from *Painter* and *Lee* because this case involves multiple defendants charged with different combinations of crimes. In *Lee*, although

---

3. There is conflicting precedent from our supreme court on the question of whether the lack of an affirmative defense should be considered an element of the crime. *See State v. Painter*, 2014 UT App 272, ¶ 8 n.2, 339 P.3d 107 (comparing our supreme court's conflicting holdings in *State v. Knoll*, 712 P.2d 211 (Utah 1985), and *State v. Low*, 2008 UT 58, 192 P.3d 867). Regardless of the answer to this question, however, jury instructions are to be read together to assess whether the jury was properly instructed, *see id.*, and "all of the elements of the charged crime" need not "necessarily be contained in one instruction," *State v. Laine*, 618 P.2d 33, 35 (Utah 1980). Thus, our ultimate inquiry concerns whether the jury instructions "taken as a whole" adequately instructed the jury. *See State v. Lee*, 2014 UT App 4, ¶ 23, 318 P.3d 1164 (quotation simplified).

the defendant was charged with several crimes, the separate self-defense instruction specifically linked the affirmative defense to the murder charge and lesser-included manslaughter charge. *See Lee*, 2014 UT App 4, ¶¶ 1, 24. And in *Painter*, the defendant was charged with only one crime—aggravated assault—so there was no danger of the jury confusing which crime the affirmative defense applied to. *See Painter*, 2014 UT App 272, ¶¶ 3, 9.

¶19     Here, there is no language explicitly linking the defense-of-others instruction to the aggravated burglary charge. The instruction simply informs the jury of the legal standard for a defense-of-others affirmative defense as well as the State's burden of proof with respect to that defense. Dominguez claims that the instruction's failure to explicitly link defense of others to the aggravated burglary charge left the jury with no information as to how to apply the defense. He further asserts that defense of others does not intuitively apply to the elements of burglary and that there was therefore a danger that the jury would apply the defense to one of the other charges—aggravated robbery or assault—and not believe that defense of others is a defense to aggravated burglary.

¶20     In reviewing the adequacy of jury instructions, "we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *Lee*, 2014 UT App 4, ¶ 23 (quotation simplified). We must also "consider a reasonable jury's understanding in the context of the jury instructions and the record as a whole." *State v. Crowley*, 2014 UT App 33, ¶ 13, 320 P.3d 677 (quotation simplified). "Even if one or more of the instructions, standing alone, are not as full or accurate as they might have been, counsel is not deficient in approving the instructions as long as the trial court's instructions constituted a correct statement of the law." *Lee*, 2014 UT App 4, ¶ 23 (quotation simplified).

¶21    There is no dispute that the defense-of-others instruction accurately instructed the jury regarding the applicable law, including the State's burden to disprove the defense beyond a reasonable doubt. Additionally, as in *Lee*, the jury was instructed that "[a]ll the instructions are important," to "consider them as a whole," and that the "order in which [they] are given" had no bearing on their importance. *Cf. id.* ¶ 25. While the defense-of-others instruction was given in the context of multiple charges without specifying the charge to which it applied, we have no basis for concluding that the jury would have interpreted this lack of specificity to mean that the defense did not apply to the aggravated burglary charge. Rather, the lack of language linking the instruction to a specific charge would most logically have been read as an instruction that the State was required to disprove defense of others with respect to all of the charges, including aggravated burglary.

¶22    Further, even assuming, as Dominguez asserts, that defense of others is not intuitively linked to an aggravated burglary charge, the link was apparent in the context of this case. Indeed, as in *Lee*, this affirmative defense was "the central theme of [Dominguez's] defense at trial." *See id.* The entire trial focused on the question of the defendants' motivation for entering Victim's room—was it for the purpose of protecting two women trapped in the room with Victim, or was it for the purpose of continuing to assault Victim? If there was any question as to the applicability of defense of others to the aggravated burglary charges, it was cleared up by the codefendants' counsel in closing arguments, each of whom clearly argued that their clients should be acquitted of aggravated burglary based on defense of others. Dominguez's counsel stated,

> So if that's the purpose of their breaking down the door and going in there . . . it's a defense of others. . . . They had a right to defend those young ladies. They did what they should have done.

. . . .

. . . . [I]n order to find . . . any of the [defendants] guilty of the aggravated burglary, . . . the prosecution has to prove beyond a reasonable doubt that the intent when they broke in that door was to assault, and not to save these girls.

. . . .

So at the end of the day I'm asking you to find [Dominguez] not guilty of aggravated burglary.

Duran's counsel likewise explained that it was "right" for the defendants to "break down the door to come to the aid of" the two women, and J. Martinez's counsel explained that the defendants entered the room for the purpose of "get[ting] the gals out." Finally, D. Martinez's attorney explicitly linked the defense-of-others instruction to the aggravated burglary charge:

Instruction No. 60 is . . . about defense of self or others. . . .

Just be clear that we're not talking about these four individuals defending themselves against [Victim]. We're talking about them going into the bedroom to defend the two ladies from [Victim], okay?

. . . .

So that's what this instruction has to do with. . . .

. . . . [T]his instruction talks about the bedroom and the girls in there.

Thus, "defense counsel's arguments ma[d]e it abundantly clear" that defense of others applied to the aggravated burglary charges. *See State v. Lambdin*, 2017 UT 46, ¶ 48, 424 P.3d 117.

¶23    In context, there is not "a reasonable likelihood that the jurors were misled or confused as to the correct legal standard." *See id.* ¶ 47. Thus, counsel did not perform deficiently by not objecting to the instructions as written.[4]

## II. Remand Under Rule 23B of the Utah Rules of Appellate Procedure Is Not Appropriate, Because Dominguez's Proffered Facts Cannot Support a Determination That Counsel Was Ineffective.

¶24    Dominguez next asserts that counsel was ineffective because he incorrectly quoted Witness's police statement when impeaching Witness. Because the record does not contain the purportedly "accurate" version of the police statement, we are unable to fully review Dominguez's claim on appeal. *See State v. Griffin*, 2015 UT 18, ¶ 16, 441 P.3d 1166 ("[A] defendant cannot bring an ineffective assistance of counsel claim on appeal without pointing to specific instances in the record demonstrating both counsel's deficient performance and the prejudice it caused the defendant.").

¶25    In light of the inadequate record, Dominguez has asked that we remand this case to the trial court under rule 23B of the Utah Rules of Appellate Procedure "for entry of findings of fact, necessary for . . . determination of a claim

---

4. We also find it noteworthy that not one, but four separate defense attorneys, representing four separate clients, approved the instructions as written. While not dispositive, this bolsters our conclusion that, in context, the applicability of the defense-of-others instruction to the aggravated burglary charges was clear to the jury.

of ineffective assistance of counsel" on appeal. *See* Utah R. App. P. 23B(a). To obtain such a remand, Dominguez must make "a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id*. The State opposes Dominguez's motion, asserting that the additional facts were insufficient to support a determination that counsel was ineffective, because the complete quoted statement would have done little more to undermine Witness's testimony than counsel's paraphrase at trial of her police statement.[5]

---

5. The State also asserts that the jury was likely to have convicted the defendants of aggravated burglary based on their "remaining" in the room, regardless of its determination as to the purpose of the defendants' initial entry into the room. We are not persuaded by this assertion. Although the jury was instructed that an element of the crime was whether the defendant "[e]ntered *or remained* unlawfully in a building, or any separately secured or occupied portion of a building," (emphasis added), the State never articulated to the jury the theory it now asserts—that the defendants may have abandoned their action of defending others when they remained in the room to assault Victim after discovering that the women were unharmed. While this is a viable theory of the case, the fact that it was not explained to the jury gives us pause in concluding, as the State urges, that the jury was *likely* to have convicted the defendants of aggravated burglary on a "remaining" theory even if it believed that the defendants initially entered the room to defend the women. We ultimately need not address this question, however, because we agree with the State that the subtle variation between the quoted language of Witness's police statement and the paraphrased language was not significant enough to have prejudiced the defense.

¶26    Apart from Victim, Witness was the only person to definitively testify at trial that the women were not in the room when the defendants broke down the door. She testified that the two women were in the bedroom when the fight initially broke out in the hallway but that they came out of the bedroom when "the defendants were fighting" and were no longer in the bedroom when Victim locked himself in. At trial, defense counsel attempted to undermine Witness's credibility on this point by confronting her with a prior statement she made to police in which she appeared to be stating that the women were in the room when the defendants broke in. On cross-examination, defense counsel asked Witness whether she had previously told police, "The girls were in the back bedroom and ran out when the boys went in the bedroom" (the paraphrased statement). Witness did not deny making the statement but pointed out that while she had stated that the girls "ran out," she did not "specify where from." She then clarified, "What I meant by 'running out,' is running out of the apartment."

¶27    In the affidavit supporting his rule 23B motion, Dominguez's counsel averred that she had listened to the audio recording of Witness's police statement and that Witness actually stated, "They were in the back of the bedroom, and then once the boys all got in the bedroom, the girls ran out and went out probably to the car, I'm guessing" (the recorded statement). In his rule 23B motion, Dominguez asserts that had counsel confronted Witness with the recorded statement, the jury would have been more likely to discount her testimony.

¶28    Dominguez argues that the statement that "the girls *ran out* and *went out* probably to the car," identifies two instances of leaving such that had the jury been presented with the actual recorded statement, it would have had no choice but to conclude that the first instance—"the girls ran out"—described their running out of the bedroom while the second instance—the girls "went out"—described their leaving the apartment. Because the

paraphrased statement described only one instance of leaving—the girls "ran out"—Dominguez maintains that the jury was more likely to accept Witness's explanation that she meant that the girls "ran out" of the apartment than it would have been had it been confronted with the recorded statement. He also asserts that the phrase "in the back *of* the bedroom," used in the recording, undermines Witness's explanation more than the phrase "in the back bedroom," as paraphrased by defense counsel at trial, because being in the back of the bedroom as opposed to simply being in the bedroom "supports more fully the testimony that the women were stuck in the bedroom with [Victim] and were afraid of him—they were in the back of the bedroom to get as far away from [Victim] as they could." Finally, he asserts that the recorded statement, "once the boys all got in the bedroom, the girls ran out," is more supportive of the idea that the girls were in the bedroom when the defendants broke in than the paraphrase, "The girls were in the back bedroom and ran out when the boys went in the bedroom."

¶29 We agree with the State that the distinctions drawn by Dominguez between the recorded statement and the paraphrased statement are too subtle to have likely impacted the outcome of the trial. The jury was required to rely on its memory as to the precise wording of the statement[6] and was unlikely to have recalled this language so vividly that it would have parsed

---

6. While Dominguez did not raise this argument, his codefendants initially asserted in the appeals of their convictions that trial counsel also erred in failing to seek the admission of the recording into evidence so that the jury could review the recording during deliberations. However, they ultimately abandoned that claim, conceding that "the audio clip would not have been allowed into the jury deliberation room because it was testimonial evidence." (Citing *State v. Cruz*, 2016 UT App 234, ¶¶ 36–41, 387 P.3d 618.)

the individual phrases in the way that appellate counsel has done. And even if it had done so, the recorded statement is still ambiguous, just as the paraphrased statement was. Neither statement explicitly states whether the women "ran out" of the bedroom or whether they "ran out" of the apartment. There is no reason to believe that Witness would have responded any differently if confronted with the recorded statement than she did when confronted with the paraphrased statement. That is, she still would have offered her explanation that she meant that the women left the apartment when the defendants broke down the door, not that they left the bedroom, and the jury would have been left to determine which explanation it believed. We are not convinced that the jury was likely to have found Witness measurably less credible had it been presented with the recorded statement rather than the paraphrased statement.

### III. The Trial Court Did Not Err in Denying Dominguez's Motion for Mistrial, Because Officer's Reference to Dominguez's Mug Shot Was Harmless.

¶30    Finally, Dominguez asserts that the trial court erred in denying his motion for mistrial because he was unfairly prejudiced by Officer's reference to his mug shot. The State does not contest Dominguez's assertion that Officer's statement was improper but argues that it is not reversible error because "a mistrial is not required where an improper statement is not intentionally elicited, is made in passing, and is relatively innocuous in light of all the testimony presented." *State v. Allen*, 2005 UT 11, ¶ 40, 108 P.3d 730.

¶31    Here, Officer indicated that he had identified Dominguez "through his mug shot that we have on file," in response to the prosecutor's question, "[D]id you run Julio Dominguez's history and access his driver's license photograph?" Dominguez asserts that the prosecutor's reference to running his "history" is equivalent to the prosecutor asking about his criminal history

and that the prosecutor therefore "elicited" the improper testimony. We disagree. The question about running Dominguez's history was explicitly linked to Officer accessing his driver license photo as a means of identification. Thus, the question is more properly interpreted as a reference to Dominguez's driving history than a reference to his criminal history. Further, the single reference to the mug shot in the course of a three-day trial was innocuous, the discussion regarding Dominguez's objection was held off the record, and the prosecutor quickly moved on to different topics. *See State v. Butterfield*, 2001 UT 59, ¶¶ 45, 47, 27 P.3d 1133 (upholding a denial of a motion for mistrial based on an officer's statement that he had obtained a photograph of the defendant "that was used in the photo array from the 'Salt Lake County Jail'" because the court considered the reference to be a "'vague,' 'fleeting' remark that was not elicited by the prosecutor"); *see also Allen*, 2005 UT 11, ¶ 40; *State v. Wach*, 2001 UT 35, ¶ 46, 24 P.3d 948.

¶32　Further, even if we were to agree with Dominguez that the reference to his mug shot was so serious as to warrant a mistrial under normal circumstances, it ultimately did not warrant a mistrial under the circumstances of this case, because after Dominguez decided to testify,[7] the State was permitted to impeach his testimony by asking him whether he had previously been convicted of a third-degree felony and two second-degree felonies. The fact that the jury was explicitly informed of Dominguez's criminal history obviated any likelihood that Officer's erroneous reference to Dominguez's mug shot affected the outcome of the trial.

---

7. There is nothing in the record indicating that Dominguez's decision to take the stand and open himself to being impeached based upon his criminal history was somehow influenced by Officer's earlier reference to his mug shot.

CONCLUSION

¶33    We conclude that counsel did not perform deficiently by not requesting a jury instruction explicitly linking the defense-of-others instruction to the aggravated burglary charge. Further, Dominguez has failed to show that remand under rule 23B of the Utah Rules of Appellate Procedure has the potential to establish facts that could support a determination that counsel was ineffective for using the paraphrased statement rather than the recorded statement to impeach Witness. Finally, because Dominguez's criminal record was admitted as impeachment evidence, the trial court did not exceed its discretion in denying his motion for mistrial based on Officer's innocuous reference to Dominguez's mug shot.[8] Accordingly, we deny Dominguez's request for rule 23B remand and affirm his conviction.

―――――――――

8. On appeal, Dominguez also asked us to reverse on grounds of cumulative error. But because we discern no error with respect to the defense-of-others jury instruction or the trial court's denial of Dominguez's motion for mistrial, Dominguez cannot establish cumulative error. *See State v. Jones*, 2015 UT 19, ¶ 74, 345 P.3d 1195 ("If the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine will not be applied." (quotation simplified)).